SMALLWOOD et al. v. MIDFIELD OIL CO. et al.

No. 4786.

Court of Civil Appeals of Texas. Texarkana.

Nov. 28, 1935.

Rehearing Denied Jan. 23, 1936.

Chauncey & Chauncey, of Longview, for appellants.

Edwin Lacy and J. N. Saye, both of Longview, George Prendergast, of Marshall, B. Reagan McLemore, of Longview, and Robert B. Keenan, of Los Angeles, Cal., for appellees.

JOHNSON, Chief Justice.

Appellants, plaintiffs in the trial court, are the duly authorized trustees of the Kilgore Circuit of the Methodist Episcopal Church, South. As such trustees, they filed this suit against appellees in trespass to try title to 2.4 acres of land, a part of the W. P. Chism survey in Gregg county, known as the Mt. Moriah Church and the Mt. Moriah Cemetery property, and to enjoin appellees from interfering with appellants' purpose to drill an oil well on that part of the property known as the church lot, which church lot is described by metes and bounds in a triangular lot located in the extreme southeast corner of the 2.4-acre tract. For convenience, the thirty-nine or more defendants may be grouped: (1) M. B. Hughey and others having relatives buried in the cemetery; (2) the heirs of W. P. and M. M. Martin, husband and wife, deceased; (3) Midfield Oil Company and others who claim mineral interests in the property.

W. P. Martin and wife, M. M. Martin, constitute the common source of title. W. P. Martin was a local minister of the Methodist Episcopal Church, South. Mt. Moriah Church was established by, and continued to be the property of, the Methodist Episcopal Church, South. The church and the cemetery were located on the land on an unknown date, many years prior to its conveyance by W. P. and M. M. Martin to G. W. Goforth in trust for the church or for both the church and the cemetery. G. W. Goforth was a member of Mt. Moriah Church and was one of the trustees of the Kilgore Circuit of the Methodist Episcopal Church, South, for a great number of years prior to the time of his death in 1933. In 1868 the old church building was torn down and a new church was built on that part of the land known as the church lot. In 1869 a fence was built around the church lot, and a fence was also built around the cemetery, since which time the cemetery has remained under a separate inclosure from the church lot, with a lane or driveway running between the two lots. In 1893 W. P. Martin and wife, M. M. Martin, executed a deed to G. W. Goforth, describing by metes and bounds the 2.4 acres of land so occupied by the church and the cemetery. The deed is in form a general warranty

deed purporting to convey the fee-simple title. No condition or trust appears upon the face of the deed. The grantors and the grantee named in the deed are now deceased. Prior to their deaths the grantors and the grantee declared that the conveyance was made and executed in trust. The evidence is controverted as to whether the property was conveyed in trust for Mt. Moriah Church or for both Mt. Moriah Church and Mt. Moriah Cemetery. Shortly prior to his death on March 27, 1933, the grantee, G. W. Goforth, executed an affidavit to the effect that he had never at any time claimed title to the land, that at the time it was conveyed to him there was located on the land the church and the cemetery, and that it was conveyed to him in trust for the church and the cemetery, and that there was an agreement (parol) between him and the grantors, W. P. and M. M. Martin, to the effect that, should the church cease to use for church purposes the lot on which it was located, he would reconvey that part of the land to the grantors or their heirs, and that it was further agreed that, should the property occupied by the cemetery ever be abandoned for cemetery purposes, it would revert to the grantors or their heirs.

There does not appear to have ever been any cemetery association or corporation separate from the church organization. In building the fence in 1869 it was testified: "The church got a graveyard committee and those in charge built a graveyard fence." It was a cemetery, public in its nature, meaning it was not an exclusive burial ground. No charges were made for interment, and all who desired were permitted to bury there. The church extended free access to its building and lot for the holding of funeral services, and at times ministers of faith other than the Methodist Episcopal Church, South, would preach in the church building. The people of that neighborhood would meet annually for a graveyard working to clean off the ground and to beautify the graves. Sometimes they would spread their lunch upon the tables in the church lot and sometimes upon tables in that part of the cemetery not occupied by graves.

The Methodist Episcopal Church, South, continued to hold their regular religious services in the Mt. Moriah Church as one of its local circuit from the time of the location of the church, at a date unknown, until 1914, when the church building was moved off the lot to a location 3 or 4 miles away, nearer the center of the community. The 2.4 acres covered by the cemetery lot and the church lot in question is located in the proven oil-producing area of the East Texas oil field, and the Midfield Oil Company had drilled two producing oil wells near by to this property prior to the trial of this cause.

When it became known that plaintiffs intended to drill an oil well on the church lot, M. B. Hughey, who had relatives buried in the cemetery, employed the Cox Fence Company to tear down the old cemetery fence and to construct a new steel fence, and in doing so to inclose within the new fence a portion of the church lot, to such an extent that there was not left of the church lot sufficient ground on which to drill an oil well. After the material for the new fence was placed on the ground and before it was constructed, plaintiffs applied for and were granted an injunction restraining Hughey and the fence company from building the proposed fence. Notwithstanding this injunction, the fence was constructed pending the proceedings. The new fence not only incloses the cemetery lot but also takes in and incloses a portion of the church lot. In this suit plaintiffs seek a mandatory injunction to have the fence moved off the church lot.

It is the contention of plaintiffs, in substance and effect: (1) That W. P. Martin and wife conveyed 2.4 acres of land to G. W. Goforth in trust for Mt. Moriah Church, and the effect of which was to invest in the church title to the entire 2.4-acre tract; (2) that dedication of the property as a cemetery extended no further than that inclosed by the cemetery fence and passageway thereto; (3) that the rights of defendants and others by virtue of having relatives and loved ones buried in the cemetery extended no further than that portion so dedicated as a cemetery; (4) that, should it be held that the deed from W. P. Martin and wife conveyed the property to G. W. Goforth in trust for both the cemetery and the church as separate entities, and that thereby the church and the cemetery became tenants in common, as contended by defendants, in the 2.4 acres, then it is contended by plaintiff that the fencing and dedication of approximately the north two-thirds of the tract of land as a cemetery, and the separate fencing of the lot on which was located the church, constituted as a matter of law a partition of the property

between the church and the cemetery; (5) that such continued use and occupancy over so great a number of years raised the presumption of an ancient agreed partition.

The defendants who have relatives buried in the cemetery claim in substance: (1) That the deed from Martin and wife conveyed the 2.4 acres to G. W. Goforth in trust for both the church and the cemetery, and the effect of which was to constitute the church and the cemetery tenants in common of the entire 2.4 acres; (2) that the separate fencing of the cemetery and the church was not for the purpose of segregation of interests or for partition between the church and cemetery, but to protect the property from cattle and stock running at large; (3) that use of the church building in holding funerals and of the church lot in eating their meals at graveyard workings and in parking their vehicles on the church lot constituted such dominion over the entire 2.4 acres as effected a dedication of it as the cemetery.

The defendants who are heirs of W. P. Martin and wife, and others claiming mineral interests under them, contend: (1) That the property was conveyed by W. P. Martin and wife to G. W. Goforth in trust for both the cemetery and the church; (2) that the conveyance was also made upon a condition, resting in parol agreement between W. P. Martin and G. W. Goforth, to the effect that, should the church lot cease to be used for church purposes, then G. W. Goforth would reconvey it to W. P. Martin and wife or their heirs, and, should the cemetery lot for any reason be abandoned as a cemetery, it would revert to the Martin heirs, and that plaintiffs had abandoned the use of the church lot for church purposes by moving the church building in 1914.

Several statutes of limitation were pleaded by plaintiffs and by defendants.

The case was tried to a jury. In response to special issues submitted the jury found: (1) That the deed from W. P. Martin and M. M. Martin in 1893 to G. W. Goforth was in trust for both the church and the cemetery; (2) that the 2.4 acres of land had not been segregated into two tracts; (3) that the church had not abandoned the property identified as the church lot; (4) that it was not understood and agreed by and between W. P. and M. M. Martin and G. W. Goforth that, in the event the property should be abandoned for church purposes, G. W. Goforth was to re-convey the property to W. P. Martin and wife or their heirs; (5) that the trustees or trustee, if any, for Mt. Moriah Cemetery, has held peaceable and adverse possession of the 2.4-acre tract of land, using and enjoying same for a period of ten years since the removal of the church building; (6) that the trustees of the Kilgore Circuit of the Methodist Episcopal Church, South, have held peaceable and adverse possession of the tract of land designated as the church lot, using and enjoying same for a period of ten years since the removal of the church building from the church lot; (7) that the trustees or trustee, if any, of the cemetery have held peaceable and adverse possession of that portion of the land inclosed by the old cemetery fence for a period of ten years prior to 1914, the date on which the church building was removed from the church lot; (8) the jury further found to the effect that claimants of the mineral interests under G. W. Goforth and the heirs of W. P. and M. M. Martin were not innocent purchasers without notice.

Upon the findings of the jury the court entered judgment decreeing the title and possession of the whole 2.4 acres of land to be vested in "G. W. Goforth, deceased, and his successors in title, to-wit: Plaintiffs herein, for the use and benefit of Mt. Moriah Cemetery and the Mt. Moriah Church." The judgment of the court further reads:

"It is further ordered, adjudged and decreed by the court that the title to the above described property be held in trust by said G. W. Goforth or his successors in trust for the joint use and benefit of both the Mt. Moriah Church and the Mt. Moriah Cemetery, which said Mt. Moriah Church is a Methodist Episcopal Church, South, in the Kilgore Circuit of the Methodist Episcopal Church, South; and that said church shall have a right to erect a church building upon any portion of said property so long as the same does not interfere with the burial of the dead by said Mt. Moriah Cemetery, and that said Mt. Moriah Cemetery shall have a right to bury the dead on any portion of said property so long as it does not interfere with the use of the property actually used by the church house.

"It is further ordered, adjudged and decreed by the court that all parties to this suit herein named be forever enjoined and restrained from drilling or causing to be drilled any oil well upon any portion of the 2.4 acre tract of land herein described."

From an order overruling their motion for new trial, plaintiffs have appealed, and by appropriate assignments of error have presented the cause to this court for review.

■ In the disposition we make of the cause it will not be necessary to discuss seriatim appellants' propositions. We have concluded that the trial court erred in restraining plaintiffs in their rights to that portion of the land described and designated as the church lot and in their enjoyment of the minerals thereunder. It is our opinion that under the law applicable to the uncontradicted facts and the findings of the jury no proper judgment could be entered other than one decreeing plaintiffs to be vested with the exclusive title and possession of the church lot. Should it be assumed that the church had no title to any of the property prior to said Martin deed, the effect of that conveyance to G. W. Goforth in trust, "both the church and the cemetery," was to vest the church with exclusive title to all the property except that portion which had been dedicated as a cemetery. "A cemetery is a place where human bodies are buried," a graveyard, and as such it is not capable of receiving conveyances as do persons and corporations. No title was acquired by the cemetery by virtue of the Martin deed. Its legal status is fixed by dedication and interments as a burial ground. The dedication of Mt. Moriah Cemetery had been effected by actual interment and inclosure many years prior to the Martin deed. Such dedication extended to all that portion of the ground thus set apart for the graveyard, whether actually occupied by graves or not. Its boundaries had been marked by a substantial fence since 1869. That the church permitted the holding of funerals in the church building and the placing of tables and parking vehicles on its church lot did not constitute a dedication of its church lot as a burial ground. The setting apart and appropriation of land as a burial ground effects in law an abandonment of its use and possession for all other purposes. Unity in right of occupancy is an essential element of tenancy in common; hence tenancy in common cannot be in respect to land dedicated as a cemetery.

■■ In reverence of the dead, the law segregates and removes from the realm of commerce property dedicated as a cemetery, and it is no longer a subject-matter of conveyance or inheritance as other property so as to interfere with the use and possession to which it has been devoted. "When once dedicated to burial purposes, and interments have there been made, the then owner holds the title to some extent in trust for the benefit of those entitled to burial in it, and the heir at law, devisee, or vendee takes the property subject to this trust." Houston Oil Co. v. Williams (Tex.Civ.App.) 57 S.W.(2d) 380, 385; White v. Williams (Tex.Civ.App.) 57 S.W.(2d) 385, and authorities there cited. By the Martin deed the church acquired no title interest in the graveyard, nor did the graveyard acquire any interest in the church lot. Therefore, as regards that portion of the 2.4 acres of land inclosed by the old fence, constituting the cemetery, the effect of the Martin deed was to place the record title in the name of G. W. Goforth and to pass the trusteeship of such cemetery property on to the trustee of the church; namely, G. W. Goforth and his successors in trust, the plaintiffs. And, as regards that portion of the 2.4 acres constituting the church lot, the Martin deed conveyed to the trustees of the church as such, namely, G. W. Goforth and his successors in trust, the plaintiffs, the fee-simple title to such lot.

The apparent conflict in the findings of the jury relating to peaceable and adverse possession may well be explained in the facts that the trustees of the church as such were the trustees of the cemetery, and there were no trustees of the cemetery independent of their capacity as trustees of the church.

Judgment of the trial court will be reversed and judgment here rendered for the appellants and against the appellees for the exclusive title and possession of the church lot; and that separable part of the judgment applying the remedy of injunction will be reversed and remanded, with binding instructions to the trial court to issue the injunction both mandatory and prohibitive as prayed for by plaintiffs, as regards the church lot. The trusteeship of the cemetery will be declared in plaintiffs for the use and benefit of the defendants and all others having burial rights therein, and the defendants will be decreed to take nothing by their cross-pleas.