JACKSON et al. v. COOPER et al.

No. 5806.

Court of Civil Appeals of Texas. Texarkana.

May 1, 1941.

Rehearing Denied May 15, 1941.

Lawrence Treadwell and Jerry C. Roe, both of Corsicana, for appellants.

Frank L. McClendon and Joe E. Estes, both of Tyler, and Aubrey A. Wilson, of Gladewater, for appellees.

WILLIAMS, Justice.

Frank J. Jackson and others not necessary to name, plaintiffs below, who have relatives buried in a public cemetery which served the Post Oak, Powder Horn and Hog Eye communities, sought to enjoin the Post Oak Baptist Church of the Colored Missionary Baptist Church of America, and O. R. Cooper, its lessee under an oil and gas lease, from drilling for oil upon a certain tract of land which plaintiffs claimed to be a part of the cemetery. The court in response to jury findings vacated a temporary writ of injunction theretofore issued, and denied plaintiffs all affirmative or other relief sought. From this judgment plaintiffs have appealed.

Under a deed dated September 18, 1895, reciting a consideration of $1 cash paid, the heirs of M. Barber conveyed to Green Baxter and A. T. Taylor, "as deacons" of above church and their successors in office, a parcel of land out of the southwest corner of the John Moffett Survey, describing the tract as being 1½ acre in length, north and south, and 1 acre in width. Under a deed dated November 22, 1895, reciting a consideration of $1 cash paid, the church through above-named officials acting as trustees conveyed to J. T. Smith, County Judge of Gregg County, and his successors in office, the north ½ acre. In 1895 there was situated in the extreme northeast corner of the original tract, and had been for a number of years, a log house in which school and religious services were conducted. On the south end of the original tract bodies had been interred. The testimony of approximately when, or the number so buried, or the location of the graves at the time the Barber deed was executed, is vague and indefinite.

A balance of 1.07 acre is left in the original tract after the north ½ acre conveyed off to the county judge is deducted. Appellants alleged that this 1.07 acre was dedicated as a cemetery by use for burial purposes. No dispute arises over the location of the south boundary line of the north ½ acre. Approximately 40 feet south of the above south boundary line and parallel therewith runs the north line of a modern steel wire fence, erected in 1937, which encloses the cemetery. Appellees in their pleading and evidence admit that the portion south of the new fence has been dedicated by usage for a cemetery and do not seek to drill on the part south of the fence. Appellants take the position that when the Barbers conveyed the 1½-acre tract to the church they conveyed same in trust for cemetery and school purposes. Predicated upon this theory of an implied dedication, they assert that the act of the church in conveying off the north ½ acre in 1895 was done in pursuance to the asserted original trust agreement and the south boundary line of the ½ acre then marked the north line of the cemetery. If the Barbers conveyed in trust for school and cemetery purposes, their deed does not express such purpose. Their deed containing a general warranty of title purports to convey unto the church a fee-simple title without any limitation or restriction as to the use to be made or that had theretofore been made of the tract. The deed from the church unto the county judge does not call for adjoinder with or mention any cemetery. The intent and purpose of the grantors or grantee in executing or accepting either deed is undisclosed by the testimony of any witness. Grantors and grantees in both conveyances are all dead.

According to the testimony of plaintiff Stanford, a barbed-wire fence was built around the cemetery in 1894 or 1895. Another plaintiff testified that this fence then enclosed the cemetery when he started to school there in 1900. Susan Scott, a defense witness, does not give the date, but testified that when she first knew the land, "there was nothing there but a little log school house, and then they started a cemetery, and when they started a cemetery they fenced it up." According to all the witnesses the barbed-wire fence remained around the cemetery until 1937 when the

modern steel-wire fence was erected in lieu thereof. Appellants claim that the new fence erected on the north side of the cemetery is located 18 or 20 feet south of the north old barbed-wire fence. Appellees' evidence amply supports their claim that the new fence on the north side is located on the identical line where the barbed-wire fence had stood.

In 1902 the church acquired an additional 1.75 acre adjoining its original tract on the west. Subsequently a church was erected approximately in the center and a school house on the north end of the 1.75 acre. The new school house was erected adjacent to the ½ acre parcel of land. The record does not disclose when the new buildings were erected. A boys' outside toilet used by the school marks the location of the old log house which stood on the original 1½-acre tract. A girls' outside toilet, a canning shed, and an old wire incinerator are now situated on the 40-foot strip in controversy. It is without controversy that for a period of more than forty years all the land north of the old barbed-wire fence has been used by the public in their gatherings. The same area has also been used as a playground by the children who attended school in the log house and in the new school house. The same ground has witnessed through the years many games of town-ball and other athletic contests. A public road touches the 1.75 acre on the west and it and the 1½ acre on the south.

■ All the foregoing facts and circumstances, together with the deeds, were before the jury when they answered in the negative special issue No. 1, reading: "Do you find from a preponderance of the evidence that that part of the 1.07 acre tract of land lying immediately north of the present steel wire fence, which tract is approximately forty (40) feet wide from north to south, and approximately one acre in length from east to west, was ever dedicated for cemetery purposes?"

The jury answered in the affirmative special issue No. 2, reading: "Do you find from a preponderance of the evidence that the north boundary line of the cemetery is along the line of the present north cemetery fence?"

In connection with above issues, the court instructed the jury:

"By the term 'dedication' as used in this charge, means an appropriation of land to some public use, made by the owner and accepted for such use by or on behalf of the public.

"By the term 'cemetery' as used in this charge, means a parcel of land which is devoted to the burial or interment of the bodies of the dead, and includes not only lots for sepulchre of bodies but also avenues, walks and grounds for shrubbery and ornamental purposes."

A fact issue as to the boundaries of the plot that had been dedicated by use for a cemetery was presented and the findings of the jury adversely to appellants will not be disturbed. Appellants cite in support of their contention: Andrus v. Remmert, Tex. Sup., 146 S.W.2d 728; Smallwood v. Midfield Oil Co., Tex.Civ.App., 89 S.W.2d 1086; Barker v. Hazel-Fain Oil Co., Tex. Civ.App., 219 S.W. 874; White v. Williams, Tex.Civ.App., 57 S.W.2d 385. They are not applicable in point of fact. Here we have an issue of fact as to the boundaries of the plot that had been dedicated by usage for a cemetery.

■■ Appellants assign as error the refusal of the court to submit their special issue No. 1, reading: "Do you find from a preponderance of the evidence that the 1.07 acre tract of land described in plaintiffs' petition was ever dedicated to cemetery purposes?" This is overruled. Appellees had admitted in pleading and evidence that the portion south of the new fence had been dedicated as a cemetery. Only that portion north of the fence was in dispute, which was covered by the issue that was submitted. "Only controverted questions of fact raised by the pleadings and the evidence in the case are to be submitted; conversely stated, uncontroverted issues are not to be submitted." 41 T. J. 1027.

The other propositions presented have been considered and are overruled.

The judgment of the trial court is affirmed.