

# THE ATTORNEY GENERAL
# OF TEXAS

GERALD C. MANN      AUSTIN 11, TEXAS

~~XXXXXXXXXXXXXXXXXXXX~~XXXX

ATTORNEY GENERAL

Railroad Commission of Texas
Austin, Texas

Dear Sirs:              Opinion No. 0-3181

                           Re:   Questions relating to the appli-
                                cation of spacing rules and the
                                subdivision rule as applied to
                                the Hawkins field.

        We have the letter of February 17, 1941, signed by Com-
missioners Sadler and Culberson, asking us thirteen questions with ref-
erence to the application of the spacing rules and the subdivision rule to
the Hawkins field. In your letter you first set forth the applicable rules
as follows:

        "On January 22, 1941, the Railroad Commission of
Texas, after due notice and hearing, promulgated and adopt-
ed field rules for the Hawkins field, Wood County, Texas,
which was discovered during the month of September, 1940.
Rule 1 of the rules referred to provides as follows:

        "'RULE 1. (A) No well shall be drilled
hereafter for oil and gas or either of them near-
er than Nine Hundred Thirty-Three (933) feet
to any other completed or drilling well on the
same or adjoining tract or farm, and no well
shall be drilled nearer than Four Hundred
Sixty-Six (466) feet from any property line,
lease line, or subdivision line; provided that,
subject to the further provisions hereof, the
commission, in order to prevent waste or to
prevent the confiscation of property, will grant
exceptions to permit drilling within shorter
distances than above prescribed whenever the
commission shall determine that such excep-
tions are necessary either to prevent waste or
to prevent the confiscation of property. When
exceptions to this rule are desired, application
therefor shall be filed with the commission,
fully stating the facts, which application shall
be accompanied by a plat drawn to the scale of
One inch equalling Four Hundred (400) feet, ac-
curately showing to scale the property on which

permit is sought to drill a well under an exception to this rule, and accurately showing to scale all other completed, drilling and permitted wells on such property; and accurately showing to scale all adjacent surrounding properties and wells. Such application shall be verified by some person acquainted with the facts, stating that all facts therein stated are within the knowledge of the affiant true, and that the accompanying plat is accurately drawn to scale and correctly reflects all pertinent and required data. Such exceptions shall be granted only after at least ten days' notice to all adjacent lessees, affected thereby, has been given, and after public hearing at which all interested parties may appear and be heard, and after the commission has determined that an exception to this rule is necessary either to prevent waste or to protect the property belonging to applicants from confiscation. All pending applications shall be amended to conform to this rule before being acted upon.

"'(b) In applying this rule, the general order of the commission with relation to subdivision of properties shall be observed.'

"On May 29, 1934, the Railroad Commission of Texas duly entered its order which read as follows:

"'IT IS ORDERED BY the Railroad Commission of Texas that in applying Rule 37 (Spacing Rule) of statewide application and in applying every spacing rule with relation to spacing in every field in this state, no subdivision of property made subsequent to the adoption of the original spacing rule will be considered in determining whether or not any property is being confiscated within the terms of such spacing rule and no subdivision of property will be regarded in applying such spacing rule or in determining the matter of confiscation if such subdivision took place subsequent to the promulgation and adoption of the original spacing rule.'

"On January 3, 1940, the Railroad Commission entered an order which read as follows:

"'IT IS HEREBY ORDERED by the Railroad Commission of Texas that in all orders, other than those dealing with strictly departmental affairs, hereinafter promulgated or adopted by the commission no motion for rehearing shall be entertained unless same is filed within a period of Fifteen (15) days from the date of the promulgation and adoption of any such order by the commission.

"'All such motions shall be filed in writing by the applicant for a rehearing specifying in detail the grounds upon which the rehearing is sought. In no event shall the commission consider any grounds not specified in such motion for rehearing in passing upon the merits of same.'

"All of the rules and orders hereinabove set out are now in force and effect."

In your letter you make separate statements and ask separate questions relating thereto, and we will follow this form in replying to your questions.

I.

"STATEMENT

"Article 6036a of the Revised Civil Statutes now in effect provides in part as follows:

"'No rule, regulation or order shall be adopted by the commission under the provisions of this act or of Title 102 of the Revised Civil Statutes of Texas, 1925, as amended, dealing with the confiscation of oil and gas and the prevention of waste thereof, except after at least 10 days' notice given in the manner and form prescribed by the commission * * *'

"Rule 1 of the spacing rules of the Hawkins field, hereinabove referred to provides in part:

"'When exceptions to this rule are desired, application therefor shall be filed with the commission fully stating the facts * * * Such exceptions

shall be granted only after at least ten (10)
days' notice to all adjacent lessees affected
thereby, has been given, and after public hear-
ing at which all interested parties may appear
and be heard and after the commission has
determined that an exception to this rule is
necessary either to prevent waste or to pro-
tect the property belonging to applicant from
confiscation.'

## QUESTION NO. 1

"Will you please advise whom the rule contem-
plates as adjacent lessees as would entitle them to no-
tice of a hearing on an application to drill an oil or gas
well in the Hawkins field?"

The proper construction of the notice provisions of Rule
37, as applied to other fields in this State, has been discussed in a few
cases. In Magnolia Petroleum Company v. Edgar, 62 S.W.(2d) 359, 361
(writ refused) it was pointed out that Article 6036a, Vernon's Annotated
Civil Statutes, merely provides that notice shall be given "in the manner
and form prescribed by Commission," and the court further observed:

"The statute itself does not undertake to desig-
nate to whom such notice is to be given nor in what form.
This for the obvious reason that it would be impossible
to designate specifically who are the interested parties."

In Rabbit Creek Oil Co. v. Shell Petroleum Corporation,
66 S.W. (2d) 737, 739, the question was raised as to whether Rule 37 was
valid, in that it provided merely for notice to "adjacent lessees," and did
not provide for notice to other adjacent owners. In holding the rule to be
valid, the court said:

"* * * But rule 37 is not unconstitutional because
it failed to provide for notice to adjacent landowners. The
rule deals with the practical matter of giving notice to the
party most vitally interested in the drilling of a well as an
exception to the rule. Exceptions are only necessary after
the particular field has been proved. The adjacent lessees
have the control and the responsibility of developing their
respective leases. They are charged with the obligation of
drilling offset wells. Their interest also requires them to
procure all the oil possible under their leases, and the les-
sees' interest in the oil is greater than that of the owner of
the fee, who usually receives only one-eighth of the oil as
royalty. Royalty interests are often sold by the owners of

the fee to numerous purchasers, resident as well as non-resident, and to whom in many instances notice of an application and hearing for the permit could not be given. If it should occur that an adjacent owner has developed or intends to develop his own land, then the commission can give him notice. The commission is required to permit the development of proven fields in accordance with the conservation laws, and as a practical proposition notice to the adjacent lessees in most cases should be and is sufficient."

Compare Humble Oil & Refining Company v. Railroad Commission, 68 S.W. (2d) 622, 624 (affirmed, sub non, Brown v. Humble Oil & Refining Company, 126 Tex. 296, 83 S.W. (2d) 935, 87 S.W. (2d) 1069) in which the court said:

"While the statute (Vernon's Ann. Civ. St. art. 6036a) does not undertake to define who are interested parties, it does provide that hearing must be held before the commission shall adopt a rule or regulation, after notice given in the manner and form prescribed by the commission itself. This we think clearly implies notice to those interested in or to be affected by the rule or regulation contemplated. * * * "

From the foregoing authorities, we conclude that the words, "adjacent lessees," are generally to be given their ordinary meaning, that is, owners of oil and gas leases covering tracts of land adjoining or bordering on the tract of land on which the application for an exception is filed. The usual situation presented to the Commission will be one where all of the land in question has been leased for oil and gas purposes, and in such cases the "lessees" are the persons owning the working interest in each lease. If cases should arise in which an oil and gas lease has not been executed, the owner or owners of the land should be given notice.

II.

"STATEMENT

"As lessee 'A' owns a lease of 160 acres the size and shape of which admits of development in accordance with the spacing regulations adopted for the field. Lessee also owns all contiguous and adjacent leases to that of his 160-acre tract.

"QUESTION NO. 2

"In view of the provisions of the spacing rule adopted for the field and that lessee owns the 160-acre tract and all

contiguous and adjacent leases, is it necessary when application for a permit to drill is filed by the owner of the 160-acre tract for the commission to give notice to the owner of the 160-acre tract who is also the owner of the contiguous and adjacent leases of his intention to drill?"

Although it is not explicitly so stated, we assume from your question that, while the tract in question could be developed without exceptions to Rule 37, a permit is applied for to drill a well as an exception to Rule 37 at a closer distance to a lease line or another well than is allowed by the rule. Under our answer to question No. 3, infra, if the well is to be drilled under the general provisions of the rule, and not as an exception, no notice to adjacent lessees is required.

Under the facts stated, where the applicant owns all contiguous and adjacent leases, we see no necessity of giving notice to him, as adjacent lessee, that he, as applicant, has applied for a permit. Of course such applicant, in his capacity as applicant, should be notified of the time and place of the hearing on his application, but, in his capacity as an adjacent lessee, there is no necessity of giving him another notice to the same effect.

III.

"STATEMENT

"Lessee owns a tract of 160 acres which is susceptible to development under the spacing rule applicable to the field and desires to drill a well which is not nearer than Nine Hundred Thirty-three (933) feet to any other completed or drilling well on the same or adjoining tract or farm and not nearer than Four Hundred Sixty-six (466) feet from any property line, lease line or subdivision line.

"QUESTION NO. 3

"Please advise whether under any spacing rule or the statutes of this state it is necessary for said lessee to obtain a permit from the commission authorizing the drilling of said well and whether, if such permit is necessary, any notices are required to be issued to any adjacent lessee or interested parties."

Under the facts stated, the well may be drilled under the general terms of Rule 37, and no permit to drill as an exception to Rule 37 need be obtained. See Gulf Land Co. v. Atlantic Refining Company, 134 Tex. 59, 70, 131 S.W. (2d) 73, 80, in which the Supreme Court said, in construing Rule 37:

"* * * In order to accomplish orderly drilling, the Commission has simply promulgated a rule fixing minimum spacing distances at which wells may be drilled without application, notice or hearing. * * * "

We also direct your attention to the Railroad Commission Statewide Rule No. 9, as amended effective January 1, 1940, which reads in part as follows:

"* * * No permit to drill any well or wells for oil or gas shall be required by the Commission except for such wells as may be drilled under exceptions to Rule 37 of statewide application or as exceptions under special field rules governing the drilling of any well or wells which have been or may hereafter be adopted by the Railroad Commission."

IV.

"STATEMENT

"Lessee owns a lot in the unincorporated town of Hawkins, in the Hawkins field, same being of such size and shape as not to be susceptible to development without an exception to the spacing rule adopted for the field, and files application with the commission in accordance with the rule for a special permit to drill a well on such lot, after which notices are issued to all owners of adjacent leases and interested parties. Subsequent to the filing of such application and the issuance of notices to all adjacent lessees and interested parties and before the hearing on such application, one or more of such adjacent lessees or interested parties conveys his or her interest in such adjacent leases to a party or parties not served with notice.

"QUESTION NO. 4

"Is the commission required to postpone the date of the hearing theretofore set in order that such additional adjacent lessees or interested parties may be notified of the application and hearing, or are such purchasers of the interest of the adjacent leases or interested parties charged with notice of the filing of the application and the time of hearing by reason of the notice served on the predecessor in title?"

Where the interests of adjacent lessees were conveyed after the notice of the hearing had been given to such lessees, the grantees of such adjacent lessees would be charged with notice of the hearing on

the application, and it would not be necessary to issue notices to such grantees. In our opinion, the analogy of the common law doctrine of lis pendens would be applied, and the purchasers from the adjacent lessees would be placed in the same position as purchasers pendente lite. Compare 28 Texas Jurisprudence 339, "Lis Pendens," § 24.

## V.

### "STATEMENT

"Subsequent to the discovery of oil in the Hawkins field, a 400-acre tract was subdivided into twenty 20-acre tracts, each being susceptible to development under the spacing rule applicable to the field and without exception to same. A purchaser of one of the interior tracts filed an application to drill a well on same as an exception to Rule 37 in order to meet offsets and to prevent undue drainage, such well being applied for less than 466 feet from the property line.

### "QUESTION NO. 5

"Please advise whether the owners of the leases contiguous to the original 400-acre tract are entitled to notice of the application and hearing as provided in said rule, or whether, such subdivision not being in contravention to the rule, notices are required to be given only to the owners of the leases adjoining or contiguous to the 20-acre tract."

The 20-acre tract, not being of such shape or area as to require development by drilling of wells as exceptions to Rule 37 is not a subdivision in violation of the subdivision rule of May 29, 1934. It therefore may be treated as a separate tract in determining whether a well may be drilled on it as an exception to Rule 37 in order to prevent confiscation of property. See Gulf Land Company v. Atlantic Refining Company, 134 Tex. 59, 71, 131 S.W. (2d) 73, 81, in which the Supreme Court said:

" * * * The Rule of May 29th, supra, uses the term 'subdivision' in defining tracts of land that have no protection from confiscation. The Commission has not seen fit to define such term and ordinarily it would not require a definition, because any tract of land segregated from a larger tract would constitute a subdivision. It is obvious that the term 'subdivision,' as used in the order or rule under discussion, has no such general meaning. If such a meaning should be given the term, a partition or division of a 1000-acre tract of land into two 500-acre tracts would constitute a subdivision of the land under the rule. Manifestly, such a construction of the

rule would be absurd, because the two 500-acre tracts would come under its ban against subdivision, while tracts of much smaller area which do not constitute subdivisions after the effective date of Rule 37 would not. As we construe the rule pertaining to 'subdivision' subsequent to the effective date of Rule 37, it means that where a tract of land is of such size and shape that it is necessary to obtain a permit as a special exception to the spacing provision of Rule 37 before a well can be drilled thereon, such a tract will be regarded as a subdivision within the meaning of the Rule of May 29th, supra, if it was subdivided out of a larger tract after Rule 37 became effective. Humble Oil & Refining Co. v. Railroad Commission (Tex.Civ.App., writ refused), 94 S.W. (2d) 1197; Falvey v. Simms Oil Co. (Tex.Civ. App.), 92 S.W.(2d) 292."

Since the 20-acre tract is of such size and shape that it can be developed without obtaining an exception to the spacing rule, it is not a subdivision and may be treated as a separate tract, and notices need be issued only to the lessee of tracts adjacent to the 20-acre tract.

## VI.

## "STATEMENT

"Prior to the adoption of the spacing regulations in the Hawkins field and the discovery of oil, lessee obtained a lease on a 4-acre tract, same being a separate fee ownership. Subsequent thereto lessee assigned the West two acres of said tract to another party. Lessee, as the owner of the remaining two acres, applied for a permit to drill a well for oil as an exception to the spacing regulation on the ground that same was necessary to prevent the confiscation of his property by reason of the fact that other lessees had drilled wells on the property contiguous to his which were admittedly draining his oil. No well had been drilled on either of the 2-acre tracts at the time the application was filed nor at the time of the hearing thereof. The application was filed for a special permit authorizing lessee to drill a well on the two acres mentioned above and no mention was made in the application or in the notice issued thereon of the west 2 acres or of the 4 acres as a whole.

## "QUESTION NO. 6

"(A) Was the application and notice of hearing on such application sufficient to authorize the commission to hear evidence on the issue of confiscation and to grant the permit as

applied for on the 2-acre tract, provided notices were
issued to the owners of all leases adjacent and contigu-
ous to the original 4-acre tract and other interested
parties, and provided the evidence at the hearing justi-
fied the commission in granting same to prevent the con-
fiscation of the applicant's property?

"(B) The location applied for on the East 2-acre
tract is admittedly necessary to prevent drainage of oil
from the entire 4-acre lease by reason of the density of
drilling in the close proximity to the location applied for,
and the owner of the West 2-acre tract did not protest
the application. May the commission on such application
to drill a well on the East two acres, issue a permit to
drill a well at a location different from that applied for
and on the West two acres and at a place where protec-
tion will not be afforded against drainage from wells on
adjacent leases?"

(A) Under the facts stated, the assignment of the lease on
2 acres out of the 4-acre tract constituted a subdivision under the provi-
sions of the Railroad Commission's rule of May 29, 1934. A subdivision
by an oil and gas lease is held to be within such rule regardless of when
it was made. Sun Oil Co. v. Railroad Commission, 68 S.W. (2d) 609, af-
firmed 126 T. 269, 84 S.W. (2d) 693; Shell Petroleum Corporation v. Rail-
road Commission, 133 S.W. (2d) 194. And an assignment of an oil and gas
lease on a portion of the leased premises would come within the same rule
and would constitute a subdivision. Compare Humble Oil & Refining Com-
pany v. Railroad Commission, 68 S.W. (2d) 625. Each of the 2-acre tracts
would be too small to be developed separately except by wells granted as
exceptions to Rule 37, since under the statewide rule prior to January 25,
1940, the minimum area was 2.07 acres, and under the statewide rule in
force thereafter and the special rule for the Hawkins field promulgated
January 22, 1941, the minimum area is 20 acres. Being subdivisions,
neither tract as such, would be entitled to a permit to prevent confisca-
tion. In Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 71, 131 S.W.
(2d) 73, 81, the court said:

"*** An examination of the order or rule of
May 29, 1934, hereinafter referred to as the Rule of
May 29th, will show that subdivisions of land, as such,
which have or hereafter may come into existence after
Rule 37 became effective are not protected at all against
confiscation. When Rule 37 and the Rule of May 29th are
read together, it is evident that exception permits may be
issued to protect such tracts from waste; but such excep-
tion permits cannot be issued to protect such tracts, as
such, from confiscation. ***"

Furthermore, since the 2-acre tract is a subdivision, the Railroad Commission could validly grant the permit only on the basis of the 2-acre tract when considered as a part of the 4-acre tract, from which it was subdivided. Railroad Commission v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W. (2d) 967.

Your question assumes that the application was made for a permit to drill a well on the 2-acre tract, considered as a separate tract, and that the notice so stated. In our opinion the notice would not be sufficient to justify the granting of a permit to drill a well on the 2-acre tract, considered as a part of the 4-acre tract. Persons receiving the notice would be entitled to rely on the notice as stating the matter to be considered by the Commission. A notice that a hearing was to be held on whether a permit should be granted to drill a well on the 2-acre tract considered as a separate unit would not apprise the person receiving the notice that the Commission was going to consider the matter of granting a permit to drill a well on the 2-acre tract considered as a part of the 4-acre tract. The issues, on the question of confiscation, would be substantially different if the 2-acre tract were considered as a part of the 4-acre tract instead of as a separate tract.

It is well settled that the notice issued by the Railroad Commission must give fair notice of the matter to be passed on by the Railroad Commission, and conversely, that the order must come fairly within the terms of the notice. State v. Blue Diamond Oil Corp., 76 S.W. (2d)852.

(B) Under the facts assumed in your question the application is for a permit to drill a well on the east 2-acre tract, considered as a separate tract, to prevent confiscation. Clearly it would be unreasonable and arbitrary for the Railroad Commission on such application to grant the permit on an entirely different tract, and such order would not be valid.

VII.

"STATEMENT

"Oil was discovered in the Hawkins field during the month of September, 1940. In 1937 'A' owned a tract of land of approximately 40 acres, his home being on five acres thereof. In 1937, prior to the discovery of oil in said field, he executed a lease on all of the 40 acres, except the five acres upon which his home was located. Said lease is now at this time in force and effect and 'A' desires to drill a well on the five acres which he has not leased and makes application therefor.

"QUESTION NO. 7

"Is 'A' entitled to a permit to drill one well on
said 5-acre tract as a matter of law to prevent the con-
fiscation of the property, there being no well on same
at the time of the filing of the application as an excep-
tion to the spacing rule in effect in the field?"

In 1937, the statewide Rule 37, providing for spacing dis-
tances of 150 feet from property lines and 300 feet from other producing
wells, was in effect. The area covered by a regular location under this
spacing pattern is 2.07 acres. The 5 acres retained by "A" would there-
fore be sufficient to justify the drilling of a well, under the spacing rule
then in effect, without obtaining a special permit, unless by reason of its
shape a well could not be drilled on the tract without being less than 150
feet from one or more property lines. The spacing rule in effect at the
time of the subdivision controls in determining whether a special permit
is required. Humble Oil and Refining Company vs. Railroad Commission,
94 S.W. (2d) 1197 (writ refused). Gulf Land Company v. Atlantic Refining
Company, 134 Tex. 59, 131 S.W. (2d) 73. If the 5-acre tract is of such
shape that a well can be drilled on it more than 150 feet from the nearest
property line and more than 300 feet from the nearest producing well, then
"A" is entitled to drill one well on his 5-acre tract as a matter of law to
prevent confiscation of property.

If, however, the 5-acre tract is of such irregular shape
that a well on it cannot be drilled except at less than 150 feet to the near-
est property line or less than 300 feet to the nearest producing well, then
the 5-acre tract is a subdivision within the meaning of the rule of May 29,
1934. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.(2d)
73. In such a case, the Railroad Commission would have to consider the
small tract as a part of the larger tract from which it was subdivided, in
order to determine whether the lessee of this tract is entitled to a special
permit in order to prevent confiscation of property. Humble Oil and Re-
fining Co. v. Potter, 143 S.W. (2d) 135; Shell Petroleum Corporation v.
Railroad Commission, 133 S.W. (2d) 194. Under the facts assumed, "A"
would not be entitled as a matter of law to a well on his 5-acre tract in
order to prevent confiscation, but he would be entitled to such well if the
facts show that the original 40-acre tract is entitled to such well. Rail-
road Commission v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.(2d)
967; Atlantic Refining Co. v. Buckley, 146 S.W. (2d) 1082 (writ dismissed).

VIII.

"STATEMENT

"In 1920 'A' and 'B' purchased a 10-acre tract
of land in the Hawkins field and each held an undivided
one-half interest therein until approximately 1935, which
was prior to the discovery of oil in the Hawkins field.
During the year 1935, 'A' and 'B' orally agreed to parti-
tion such 10-acre tract and did orally partition same and
thereafter each exercised complete dominion over the

part set aside to each of them. No deed of conveyance or written agreement of partition was ever executed or recorded of doing same, but the fact of partition as set out above was established without dispute at the hearing on application for a permit to drill wells on each of said tracts filed by the owners thereof.

### "QUESTION NO. 8

"May an oral partition be effected and established as set out above and, if so, is the commission required as a matter of law to grant at least one permit on each 5-acre tract on the application of the owners thereof in order to prevent confiscation of property?"

Under the facts stated, the oral partition together with the actual division of possession and dominion over the property, was legally effective to accomplish a partition as the parties intended, and, since the partition took place prior to the discovery of oil, the partition would not be a subdivision within the contemplation of the rule of May 29, 1934. Therefore, "A" and "B" would each be entitled to a permit as a matter of law on his 5-acre tract in order to prevent confiscation of property. Shell Petroleum Corporation v. Railroad Commission, 116 S.W.(2d) 439 (writ dismissed).

### IX.

### "STATEMENT

"'A' owns and has owned for many years prior to the discovery of oil in the Hawkins field, two lots in the unincorporated town of Hawkins in said field. Said lots are separated by a public street or road dedicated as such many years prior to the discovery of oil in the field. The two lots owned by 'A' face each other across said street or road. Said road or street is 100 feet wide. 'A' owns no other property in the unincorporated town of Hawkins except the two lots mentioned above.

### "QUESTION 9

"Is 'A' entitled as a matter of law to drill at least one well on each of said lots in order to prevent the confiscation of his property?"

"A" is not entitled as a matter of law to drill at least one well on each of his lots in order to prevent the confiscation of his property. The dedication of a street does not operate to pass the fee title to

the public authority, but merely creates an easement in favor of the pub-
lic. O'Neal v. City of Sherman, 77 Tex. 182, 14 S.W. 31; 14 Tex. Jur. 722.
A conveyance of a lot bordering on a street or alley ordinarily passes ti-
tle to the center of the street or alley, subject to the public's easement,
unless a contrary intention is expressed in plain and unequivocal terms.
Cantley v. Gulf Production Co., 135 Tex. 339, 143 S.W. (2d) 912; Cox v.
Campbell, 135 Tex. 428, 143 S.W. (2d) 361. Exceptional cases may arise
where the grantor did not own any interest in the land covered by the road
or street, and in such cases, of course, the purchaser of the lot would not
by such conveyance acquire any title in the land covered by the street or
road. Day v. Chambers, 62 Tex. 190. In the usual situation, however,
"A", in the case assumed by your question, would be the owner of the min-
erals under the street or road, as well as under the two lots bordering on
it. Since the two lots and the street together constitute one continuous
tract, so far as the ownership of the minerals is concerned, the street and
the two lots must be considered together in determining whether "A" is
entitled to a permit to drill a well to prevent the confiscation of his prop-
erty. Compare Railroad Commission v. Wood, 95 S.W. (2d) 1328 (writ
refused); Humble Oil & Refining Company v. Railroad Commission, 99
S.W. (2d) 1052, (writ refused).

## X.

## "STATEMENT

"The commission's statewide 20-acre spacing rule
became effective January 25, 1940. Subsequent to that date
and prior to the discovery of oil in the Hawkins field and the
adoption of field rules for the Hawkins field, 'A' as the own-
er in fee of a 10-acre tract in said field, executed a lease
to 'B' on four acres out of such tract.

## "QUESTION NO. 10

"(A) May the commission grant 'B's' application for
a permit to drill a well on his 4-acre tract in order to pre-
vent confiscation of property?

"(B) May the commission grant 'B's' application to
drill a well on his 4-acre tract in order to prevent physical
waste?"

(A) The Railroad Commission may not grant "B's" appli-
cation for a permit to drill on his 4-acre tract, considered as a separate
tract, in order to prevent confiscation of property. As we have already
pointed out in answer to your 6th question, a subdivision by an oil and
gas lease falls within the rule of May 29, 1934, even though such lease is
made before the discovery of oil. Sun Oil Company v. Railroad Commis-
sion, 68 S.W. (2d) 609, affirmed, 126 Tex. 269, 84 S.W. (2d) 693; Shell

Petroleum Corporation v. Railroad Commission, 133 S.W. (2d) 194. It follows that "B's" 4-acre tract must be considered with the tract from which it was subdivided in determining whether "B" is entitled to drill a well on it in order to prevent confiscation of property. Humble Oil & Refining Company v. Potter, 143 S.W. (2d) 135; Shell Petroleum Corporation v. Railroad Commission, 133 S.W. (2d) 194.

(B) The question of subdivision relates only to the issue of confiscation, and the fact that such subdivision has taken place does not prevent the granting of a permit to "B" on his 4-acre tract in order to prevent waste. In Gulf Land Co. v. Atlantic Refining Company, 134 Tex. 59, 76, 131 S.W. (2d) 73, 83, the Supreme Court said:

> ". . . As we interpret Rule 37 and the Rule of May 29th, the fact that a tract of land is a subdivision within the meaning of the rule last mentioned is no impediment to the granting of a well permit thereon as an exception under Rule 37 to prevent waste. In other words, the rule pertaining to subdivisions has no application to well permits granted to prevent waste . . ."

## XI.

### "STATEMENT

"The commission's statewide 20-acre spacing rule became effective January 25, 1940. Subsequent to such date and prior to the discovery of oil in the Hawkins field and the adoption of the special rules applicable to said field, 'A' as the owner of a 4-acre tract, executed a lease on two acres to one person and on two acres to another person, and each has applied for a permit to drill on his respective 2-acre tract.

### "QUESTION NO. 11

"(A) Can the commission grant to each of said applicants a special permit authorizing the drilling of a well on each respective tract in order to prevent confiscation of property?

"(B) Can the commission grant to each of said applicants special permit authorizing the drilling of a well on each respective tract in order to prevent physical waste?"

(A) Under our answer to subdivision "A" under question No. 10, supra, we have pointed out that a subdivision by oil and gas lease comes within the provisions of the rule of May 29, 1934, regardless of

whether it was before or after the discovery of oil. Sun Oil Company v. Railroad Commission, 68 S.W. (2d) 1609, affirmed, 126 Tex. 269, 84 S.W. (2d) 693; Shell Petroleum Corporation v. Railroad Commission, 133 S.W. (2d) 194. Since each of the 2-acre leases would constitute a subdivision within the meaning of the rule, neither of the applicants would be entitled to the well of his 2-acre tract considered as a separate tract to prevent confiscation of property. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W. (2d) 73.

(B) As we have pointed out in answering subdivision "B" of question No. 10, the question of subdivision does not affect the authority of the Railroad Commission to grant a special permit to prevent waste. Gulf Land Company v. Atlantic Refining Co., 134 Tex. 59, 131 S.W. (2d) 73. Therefore, if the Commission finds upon substantial evidence that waste will be prevented by the drilling of a well on each tract, it may grant a special permit to each applicant.

XII.

"STATEMENT

"The commission's statewide spacing rule became effective January 25, 1940. Prior to the discovery of oil in the Hawkins field and the promulgation of the special rules applicable to the field, 'A' as the owner of a separate fee ownership of a 10-acre tract executed a lease on four acres of same to 'B'.

"QUESTION NO. 12

"Should it be held by you, in answer to the previous questions that 'B' as the lessee of such 4-acre tract is not entitled to a special permit authorizing the drilling of a well on such 4-acre tract in order to prevent confiscation of property and/or physical waste, please advise whether, if the commission should refuse a permit to drill on such 4-acre tract on the application 'B' and 'B' surrenders his lease to the fee owner, the fee owner would then be entitled to make application for and receive the permit to drill."

As we have already stated, the Commission would not be prevented by the fact of subdivision from granting a special permit to "B" to drill a well on the 4-acre tract in order to prevent waste, but it would be prevented from granting a special permit to "B" to drill upon the 4-acre tract, considered as a separate tract in order to prevent confiscation of property. If "B" surrenders his lease to the fee owner, and the 10-acre tract is not itself a subdivision from a larger tract, the fee owner would be entitled to one well on his 10-acre tract in order to prevent confiscation of property. Dailey v. Railroad Commission, 133 S.W. (2d) 219 (writ refused); Nash v. Shell Petroleum Corp., 120 S.W. (2d) 522 (writ dismissed).

## XIII.

## "STATEMENT

"The Cemetery Association within the town of Hawkins owns a 2-acre burial plot, having acquired same long prior to the adoption of the original statewide spacing rule in 1919. One and one-half acres of the 2-acre tract is used for burial purposes and is separated by a fence from the other one-half-acre and has been so separated for a number of years. The one-half-acre portion of the 2-acre tract has never been used for burial purposes. The Cemetery Association prior to the discovery of oil in the Hawkins field executed an oil and gas lease on the entire two acres. The owner of the oil and gas lease then applied for a permit to drill a well on the unused portion of the cemetery as an exception to the spacing rules in the Hawkins field. No wells are now located either on the one and one-half-acre portion of the tract or the one-half-acre portion of the tract.

### "QUESTION NO. 13

"(A) In the absence of any protest on the part of the families or relatives of people who are buried in the cemetery, may the commission, in order to prevent confiscation of property or physical waste, grant a permit to drill a well as an exception to the spacing rule on the unused portion of the entire cemetery lot.

"(B) Over the protest on the part of the families or relatives of people who are buried in the cemetery, may the commission, in order to prevent confiscation of property or physical waste, grant a permit to drill a well as an exception to the spacing rule on the unused portion of the entire cemetery lot?"

For convenience, we shall answer subdivision (B) before answering subdivision (A).

(B) From the facts stated, we assume that the entire 2-acre tract was acquired by the Cemetery Association for burial purposes, but that only one and one-half acres of this tract is actually occupied by graves, the remaining one-half acre being reserved for such use when it may be needed at some future time. Based on this assumption, it is our opinion that if the families or relatives of persons who are buried in the cemetery protest, the Cemetery Association would have no lawful authority to permit the use of any part of the cemetery for uses other than burials. In Oakland Cemetery Company v. Peoples Cemetery Association, 93 Tex. 569, 574, 57 S.W. 27, 28, the Supreme Court said:

"After the dedication of the land, the legal title remained in the corporation only for the purpose of conveying the lots to those who desired to use them for the purpose of burying the dead. No power is given by the statute to such corporations to convey the property for any other purpose, and the fact that the lots and subdivisions are made unchangeable and that the power to convey is restricted to the conveyance of 'any lot or lots * * * for purposes of sepulture' operates as a limitation upon the power of the corporation to convey the land to 'a lot or lots' and for the uses named. Upon dedication, the dominion of the corporation over the land as owner in fee simple was surrendered and the corporation became in effect a trustee to sell and convey the lots for the purposes specified and to carry out the purposes enumerated in the statute, with the right to appropriate the proceeds of the sale to itself in payment of the land."

In Houston Oil Co. v. Williams, 57 S.W. (2d) 380, 384, (writ refused) the court said:

" . . . It appears to be the rule that, where property has been actually appropriated either as a private family burying ground or as a public cemetery, it cannot in either instance be inherited or conveyed as other property is done so as to interfere with the use and purposes to which it has been devoted. Peterson v. Stoltz (Tex.Civ.App.) 269 S.W. 113; Stewart v. Garrett, 119 Ga. 386, 46 S.E. 427, 64 L.R. R. A. 99, 100 Am.St.Rep. 179; Hines v. State, 126 Tenn. 1, 149 S.W. 1058, 1059, 42 L.R.A. (N.S.) 1138, and other cases. Quoting, as very aptly stated, from the Hines Case, supra: 'When once dedicated to burial purposes, and interments have there been made, the then owner holds the title to some extent in trust for the benefit of those entitled to burial in it, and the heir at law, devisee, or vendee takes the property subject to this trust.'"

The relatives of persons buried in the cemetery would be entitled to raise objections to the use of the cemetery for purposes other than as a place of burial. In Barker v. Hazel-Fain Oil Co., 219 S.W. 874, 879 (writ refused) the court said:

" . . . They have, as we think, a right to protect the graves of their dead, not only as against the original donor and the trustees of the Pleasant Grove Church, but also as against all persons so long as the graveyard maintains its lawful existence. . . ."

The right of the family and relatives of persons buried in a cemetery to object to the drilling of an oil well in the cemetery extends

to all of the cemetery, and not merely to the part of the cemetery that is actually occupied by graves. In Cochran v. Hill, 255 S.W. 768, 770, the court said:

> "We believe this equity power extends to the protection of the entire lot owned by the Cemetery Association, irrespective of whether there are any graves in any certain part of it or not. Those who have loved ones buried there are entitled to have the hallowed spots protected from the heedless search for hidden wealth and from the rapacious hands who would convert its sacred confines into a place of money getting."

In White v. Williams, 57 S.W. (2d) 395, 386, the court said:

> "* * * therefore the only question to be determined on this appeal is whether under the facts in this case Mrs. White was entitled to apply to a court of equity for a restraining order to prevent the drilling of an oil well on this plot of ground. We think she had such right. This was the effect of the holding in the case of Barker et al v. Hazel-Fain Oil Co., et al. (Tex.Civ.App.) 219 S.W. 874, 875, and that this right extends to the whole plot of ground and not just to that portion of the same where interments had already been made. Cochran et al v. Hill et al. (Tex.Civ. App.) 255 S.W. 768."

The same holding is found in Smallwood v. Midfield Oil Company, 89 S.W. (2d) 1086, 1090, (writ dismissed) where the court said:

> " * * * The dedication of Mt. Moriah Cemetery had been effected by actual interment and inclosure many years prior to the Martin deed. Such dedication extended to all that portion of the ground thus set apart for the graveyard, whether actually occupied by graves or not. * * * "

See also Smith v. Merrill, 81 F. (2d) 609, and Railroad Commission v. Wood, 95 S.W. (2d) 1328 (writ refused). In each of these cases, a cemetery was involved and an order of the Railroad Commission refusing to grant a permit to drill an oil well was sustained. However, each case was decided on points which did not involve the right to drill an oil well in a cemetery.

(A) Although the law has not been settled by any court decision, we are of the opinion that where the Cemetery Association by its proper officers has executed an oil and gas lease and all owners of lots in the cemetery and all of the families and relatives of persons buried in the cemetery consent to the drilling of a well on a portion of the cemetery not actually used for graves, the Railroad Commission would be

authorized to grant a permit to drill a well on such portion of the cemetery.

Article 922a, Vernon's Annotated Civil Statutes, provides as follows:

"After such property is so dedicated to cemetery purposes, neither the dedication nor the title of a plot owner shall ever be affected by the dissolution of the association or by non-user on its part, or by alienations of the property, or by any encumbrances thereon, or by forced sale under execution or otherwise, and such dedication shall not be deemed or held invalid as violating any existing laws against perpetuities or the suspension of the power of alienation of title to or use of property, but such dedication is hereby expressly permitted, and shall be and shall be deemed to be in respect for the dead, a provision for the disposition of the bodies of deceased persons, and a duty to, and for the benefit of, the general public, and said property shall be held and used exclusively for cemetery purposes unless and until the dedication shall be removed by an order and decree of the District Court of the county in which the same is situated, in a proceeding brought therefor by the governing body of the city, if said cemetery is within, or within five (5) miles from the city limits of, any city or more than twenty-five thousand (25,000) inhabitants according to the last preceding Federal Census, or by the District Attorney, if said cemetery is not within, or within five (5) miles of the city limits of, a city of more than twenty-five thousand (25,000) inhabitants, according to the last preceding Federal Census, or by the owner of property so situated that its value is affected by said cemetery, upon notice and proof satisfactory to the Court that all bodies have been removed therefrom, or that no interments were made therein, or that the same is no longer used or required for interment purposes, or until the maintenance of said cemetery is enjoined or abated as a nuisance as hereinafter provided for. After such dedication and as long as said property shall remain dedicated to cemetery purposes, no railroads, street, road, alley, pipe line, pole line, telephone, telegraph, or electric line, or other public utility or thoroughfare whatsoever shall ever be laid out through, over, or across any part thereof, without the consent of the directors of the cemetery association owning or operating the same, or of not less than two-thirds (2/3) of the owners of burial plots therein, and all of such property, including roads, alleys, and walks therein, shall be exempt from public improvement assessments and all public taxation, and shall not be liable to be

sold on execution or applied in payment of debts due from individual owners of burial plots therein. (Acts 1934, 43rd Leg., 2nd C.S., p. 146, ch. 66, § 1.)"

It will be noted that this statute provides in part that the dedication of property for cemetery purposes shall not be affected "by alienations of the property", but it is further provided that for certain specified purposes, rights of way may be granted across part of the premises by the consent of the directors or of two-thirds of the owners of burial plots therein. Article 923a, Vernon's Annotated Civil Statutes, also provides that a vested right of interment may be waived. While these statutes do not relate to the specific problem here involved, they do indicate a policy that rights in a cemetery or a part thereof may be waived or abandoned. Compare Meadows v. Edwards, 116 S.W. (2d) 831, 834 (writ refused), in which the court said, with reference to a private cemetery:

"These undisputed facts and circumstances coming in the main from appellees, show in our opinion, conclusively that only that part of this tract of land inclosed by the fence as it has existed since 1931 is impressed with and devoted to a cemetery. Houston Oil Co. of Tex. v. Williams, Tex.Civ.App., 57 S.W.(2d) 380, writ refused. And the oil and gas leases given by these appellees and their joint owners covering this tract of land, so long as operations thereunder were confined to the land outside the inclosed cemetery and no desecration thereof occurred, were not illegal, immoral, or against any phase of our public policy . . . "

We believe, therefore, that public policy would not prohibit an agreement which in effect constituted an abandonment by all interested parties of their rights to insist that a certain portion of the premises be used for cemetery purposes, where the portion of the premises so abandoned are not actually occupied by graves or sepulchers. We further believe that the Railroad Commission would be authorized to require the applicant to make proof that all persons owning burial plots and all of the families and relatives of persons buried in the cemetery had been given adequate notice and had failed to protest or had consented to the granting of such permit.

APPROVED MAR 24, 1941

/s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

JPH:EP/cm

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ James P. Hart
        James P. Hart
              Assistant

APPROVED OPINION
COMMITTEE
By /s/ BWB
      Chairman