THE STATE OF TEXAS V. FOREST LAWN LOT OWNERS ASSOCIATION.

No. A-3730. Decided January 7, 1953.
Rehearing overruled February 11, 1953.
(254 S. W. 2d Series 87)

42

*Price Daniel*, Attorney General, *William S. Lott*, Assistant Attorney General, for the State, *Henry Wade*, District Attorney of Dallas County, and *J. J. Fagan*, Assistant District Attorney of Dallas County, both of Dallas, for Dallas County, Petitioners.

The trial court was correct in holding that respondent, Forest Lawn Lot Owners Association, did not have any right, title or

interest in the lands in controversy at the time the State acquired the right-of-way through such lands, in 1938, and it was error for the Court of Civil Appeals to reverse such ruling. Foster v. Powers, 64 Texas 247; Hollis v. Smith, 64 Texas 280; Bradford v. Knowles, 86 Texas 505; Cleveland State Bank v. Gardner, 121 Texas 580, 50 S.W. 2d 786.

*Eades & Eades*, of Dallas, for respondent.

The Court of Civil Appeals correctly held that respondent association did have a right, title and interest in the lands taken and appropriated by petitioner State for highway purposes. Oakland Cemetery Company v. Peoples Cemetery Association, 93 Texas 569, 57 S. W. 27, 55 L.R.A. 503; Peterson v. Stolz, 269 S. W. 113, writ of error refused; Smallwood v. Midfield Oil Company, 89 S. W. 2d 1086; Ex Parte Britton, 127 Texas 85, 92 S.W. 2d 224.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Being thereunto authorized by the Legislature, respondent, as plaintiff, filed suit against the State of Texas, as defendant, seeking damages alleged to have occurred by reason of the building by the State of a highway through Forest Lawn Burial Park, it being alleged that the building of the highway constituted a taking, damaging and destruction of plaintiff's property for public use without adequate compensation in violation of Article 1, Section 17, of the Constitution of the State of Texas. Other parties were impleaded. At the close of plaintiff's evidence the Court instructed a verdict for defendant and entered a take nothing judgment against the plaintiff. The Dallas Court of Civil Appeals, with Chief Justice Bond dissenting, reversed the judgment of the trial court and remanded the cause for retrial. 248 S. W. 2d 793.

It is admitted that in July 1938 the State obtained a deed to the highway right of way through the cemetery property from Forest Lawn Burial Park, Inc., a corporation, then thought by the proper governmental agencies to be the owner thereof. But the plaintiff contends that at such time it was the owner of the property involved or of an interest therein and that the defendant did not obtain such title or interest either by conveyance or by condemnation proceedings. The State denies that the plaintiff ever owned an interest in the property included in the right of way, but says that if it be mistaken in this contention then

the plaintiff's interest was lost to it through foreclosure of a prior owner's vendor's lien.

The plainiff contends that its title or interest was not cut off by the foreclosure suit inasmuch as it was not made a party to such suit. The State asserts that the plaintiff was a sub-vendee and that it was not necessary to make the plaintiff a party to the foreclosure suit in order to vest superior legal title in the purchaser at the foreclosure sale and that the State has acquired such title, to which assertion the asnwer of the plaintiff is three-fold: (1). The suit through which the State's title emanates was not in fact a suit to foreclose the vendor's lien but was an equitable proceeding to collect the notes through receivership; (2). The interest owned by the plaintiff in the lands dedicated as a perpetual care cemetery was not subject to forced sale; and (3). The vendor, having alternative remedies and having elected to collect his debt and to foreclose his lien instead of asserting his superior title, lost that title to his vendee and it passed to the plaintiff as a sub-vendee.

Here, issue is joined.

The State also presents other reasons for its position that the plaintiff lost its interest in the property, if any it ever had, but it will be unnecessary to enumerate them since we have concluded that the interest was lost to the plaintiff through the judgment in the suit filed by the prior owner.

In 1922 Oliver Letot, the then owner, conveyed all the land located in the cemetery to E. E. Widner and as a part of the consideration for such conveyance Widner executed five notes, all secured by an express vendor's lien reserved in the deed. In December 1922 Widner conveyed the property to Forest Lawn Company, a corporation, which corporation had the land surveyed and platted into burial lots, parkways, walkways, etc., and filed such plat together with an instrument of dedication, dedicating said land as a perpetual burial ground, of record in Dallas County.

In April 1923 Forest Lawn Company executed an instrument entitled "Rules and Regulations." The preamble recited that Forest Lawn Company, a corporation, had dedicated the properties involved as a burial park and desired to make provisions for the perpetual care of the lots, parks, park reserves, walkways, etc. It further recited that Forest Lawn Lot Owners'

Association, a corporation, plaintiff here, had been "formed for the purpose of the maintenance and upkeep of the Burial Park." The instrument then recited that the corporation "has this day transferred, assigned and conveyed unto the Association, its successors and assigns, all of the walkways, parks, park reserves and private driveways in the Burial Park now or hereafter to be made * * *." The instrument also set up a fund into which a portion of the proceeds of the sale of lots would be paid to be used by the grantee in the maintenance of the cemetery property. The State contends that this writing was but a rededication of the property for cemetery purposes, but as has been indicated it will be assumed that it was effective as a conveyance.

Default having occurred in the payment of the vendor's lien notes, Letot filed suit in July, 1935, against Widner and Forest Lawn Cemetery and Mausoleum, a corporation—successor to Forest Lawn Company—and other defendants, but did not make Lot Owners' Association a party. The petition alleged the execution and delivery of the notes heretofore described as a part of the consideration for the purchase of the cemetery property, it being further alleged that the notes were fully described in a certain deed "in which deed a vendor's lien is retained against said land by the grantors to secure payment of the above described notes." It was further alleged that a part of the land had been "released from the vendor's lien"; "that the vendor's lien securing the payment of said notes is in full force and effect against the unreleased portions of said tract of land, and said plaintiff has in no manner waived or released his lien thereon and is entitled to a decree fixing and establishing his lien as a superior encumbrance against the unreleased part of said land and against all funds and moneys realized from the sale of lots heretofore made, * * * and is entitled to a decree foreclosing his lien against said land and directing the sale thereof for cemetery purposes in such manner as the court may direct, and to apply the proceeds of the sale thereof to plaintiff's said debt"; that the defendant, Forest Lawn Cemetery and Mausoleum, had dedicated the "entire tract of land to a public use as a cemetery so that no part thereof can now be sold for any other purpose" and the plaintiff was "entitled to have the unsold portions of said land sold for cemetery purposes in such manner as the court may in equity direct to satisfy plaintiff's lien", and that the plaintiff was "entitled to a prior lien upon all the funds realized from the sale of the property"; that the said defendant had incurred other obligations and had sold lots

and received notes therefor and the plaintiff was "entilted to a prior and superior equitable lien upon said notes and contracts to secure the payment of his notes * * * and the satisfaction of his vendor's lien" on the property. The petitioner also alleged that the property was being neglected making it impossible to sell lots therein, and that the plaintiff's lien was "being depreciated in value" and his security becoming worthless.

The petition sought an accounting of funds received by the defendant corporation and prayed for the appointment of a Receiver with authority to take charge of the cemetery property and of all notes, accounts, property and effects of the defendant, Forest Lawn Cemetery and Mausoleum, with power to "manage, control, operate, develop and maintain said cemetery property and to collect, receive and receipt for all notes, accounts and contracts outstanding owing to said defendant, and to sell lots and burial spaces in said cemetery"; to pay costs of operation "and to apply the balance to the payment of the debt" of the plaintiff. In addition there was a prayer that "the vendor's lien securing plaintiff's said debt be fixed against all the unsold portion of said 149.73 acres tract of land and all notes and contracts executed by purchasers of lots in said cemetery * * * and that said lien be decreed to be a first and superior lien, having priority over all other liens, claims and indebtedness, of whatsoever kind or character * * *."

The foregoing analysis of the petition satisfies us that the suit was primarily and essentially one to recover the amount due on the notes and to foreclose the vendor's lien securing their payment. The appointment of a receiver was but incidental to the main purpose of the suit, made necessary as an efficacious means of dealing with property dedicated to cemetery purposes. A great number of lots had already been sold and were then in use as a place of sepulcher for the dead. At the time the suit was filed Article 912a, Section 23, Vernon's annotated Civil Statutes provided, and yet provides, that the creation of a lien upon property dedicated as a cemetery should "in nowise or at all affect or defeat the dedication thereof," but should "be subject and subordinate to such dedication," and further provided that "any and all sales made upon foreclosure thereof shall be subject and subordinate to the dedication of such property to cemetery purposes." It was provided by Section 11 of the same article that after dedication of property to cemetery purposes "neither the dedication nor the title to the exclusive right of

sepulcher of a plot owner" should "ever be affected * * * by forced sale under execution or otherwise."

The judgment, which is quoted at considerable length in the Court of Civil Appeals' opinion (248 S. W. 2d 796, 797), decreed to the plaintiff Letot, a recovery on his notes and recognized and found that the debt was "secured by vendor's lien expressly retained" in the deed from Letot to Widner. It found that the property had been dedicated as a cemetery and that many lots had been sold and used for the interment of the remains of deceased persons, and provided "that the rights of the owners of said lots and burial plots have been permanently fixed and established and are entitled to be preserved and protected, and such rights shall in no manner be disturbed or affected by this judgment but shall remain inviolate." The judgment established several debts against the defendant Forest Lawn Cemetery and Mausoleum, directed the sale by a receiver of the land in question and of all of the assets of such corporate defendant and decreed that the conveyance of the land should "be made subject to and subordinate to the dedication of such property for cemetery purposes and to the rights and titles of all persons owning lots or plots therein." Plaintiff's debt was given priority of payment out of funds realized from the sale and execution was directed to issue in his favor for any balance remaining unpaid.

Quite obviously the sale of the property could not well follow the normal course of judicial sales under a foreclosure judgment; the use to which the property could be devoted was limited and the field of prospective purchasers accordingly narrowed. Apparently both the plaintiff and the court regarded a temporary management and an eventual sale by a receiver as calculated to produce the best result for all parties concerned. But this did not prevent the nature of plaintiff's suit from being one to foreclose the vendor's lien nor did it alter the nature of the legal consequences flowing therefrom or from the judgment therein.

█ Plaintiff's contention that its interest in the property was not subject to forced sale seems to rest principally upon the statutory provisions heretofore quoted and upon language used by the courts in the cases of Oakland Cemetery Co. v. Peoples Cemetery Assn., 93 Texas 569, 57 S. W. 27, 55 L. R. A. 503; Close v. Glenwood Cemetery, 107 U. S. 466, 2 Sup. Ct. 267, 27 L. Ed. 408; Peterson v. Stolz, Tex. Civ. App., 269 S. W. 113, writ refused; Smallwood v. Midfield Oil Co., Tex. Civ. App., 89 S. W. 2d 1086, writ dismissed, and United Cemeteries Co.

v. Strother, 332 Mo. 971, 61 S. W. 2d 907, 90 A. L. R. 438. The substance of what is said by the courts in all the cited cases is that property once dedicated to cemetery purposes and in use as a burial ground for the dead may not be sold, either voluntarily or through judicial proceedings, in such manner as to interfere with the uses and purposes to which it has been dedicated and devoted. We can agree completely with these assertions and it may be noted that the court was careful to protect the rights of individual lot owners and to preserve the character of the property in its judgment. It ordered a sale of the property to another cemetery company organized for the purpose of operating a perpetual care cemetery. Thus the requirements of both statutory and case law were met and complied with. But this does not at all lead to the conclusion reached by the plaintiff that as a necessary consequence the sale was subject to all of its "equities and rights".

If the plaintiff took anything by reason of the execution of the Rules and Regulations heretofore mentioned it took the same title or interest in the walkways, parks, park reserves and private driveways that was theretofore held by the Forest Lawn Company and its successor, Forest Lawn Cemetery and Mausoleum. The interest so held by it was as much subject to divestiture as it would have been if it still had been owned by its grantor. The inclusion of the walkways, etc. as a part of the property sold to Forest Lawn Burial Park, Inc., the State's grantor, did not interfere with the dedication or use of such walkways, etc. as a part of the cemetery property, but the sale was nonetheless a valid sale.

From what has been said it follows that the rights and interest of the plaintiff in the land conveyed to the State are to be determined by the rules of law governing the rights and status of the ordinary sub-vendee of land who is not made a party to a suit for foreclosure of a prior vendor's lien. We now weigh the plaintiff's rights in the light of those rules.

■ It is long since settled by the decisions of this court that a deed in which an express vendor's lien is reserved to secure the payment of purchase money will, as between the parties and their privies, be treated as an executory contract of sale under which, until the purchase money is paid, the superior legal title remains in the vendor and the vendee acquires an equitable right to obtain the legal title by payment of the purchase money. Foster v. Powers, 64 Texas 247; Ransom v. Brown, 63 Texas

188; Bradford v. Knowles, 86 Texas 505, 25 S. W. 1117; Johnson v. Wood, 138 Texas 106, 157 S. W. 2d 146. This is so even though as to strangers and for many purposes the transaction is treated as an executed one. Humphreys-Mexia Co. v. Gammon, 113 Texas 247, 254 S. W. 296, 29 A.L.R. 607. So it is that in this case the superior legal title to the property remained in Letot, and his vendee, Widner, acquired the right to become the owner of the legal title by payment of the purchase money notes. Neither Forest Lawn Company, Widner's vendee, nor the plaintiff, Widner's sub-vendee, acquired any greater interest or title than did Widner; they but stood in his shoes. Foster v. Powers, supra.

■ It is also well settled that the plaintiff was not a necessary party to Letot's foreclosure suit. Ufford v. Wells, 52 Texas 612, 619; Foster v. Powers, 64 Texas 247; Howell v. Townsend, Tex. Civ. App., 217 S. W. 975, writ refused; Reed v. Staley, Tex. Civ. App., 139 S. W. 2d 851, no writ history. Nor did the failure to join the plaintiff give it the legal title to the property. But since it was not a party thereto plaintiff's equitable right to become the owner of the legal title to the property by paying the purchase money debt was not cut off by the suit. It could have acquired the legal title by intervening in the Letot suit and tendering the amount due on the notes. Stone Cattle & Pasture Co. v. Boon, 73 Texas 548, 11 S. W. 544. Failing so to do, however, the legal title, formerly held by Letot as vendor, passed through the foreclosure proceedings to Forest Lawn Burial Park, Inc., the purchaser from the receiver. Foster v. Powers, 64 Texas 247; Thompson v. Robinson, 93 Texas 165, 54 S. W. 243, 77 Am. St. Rep. 843; Wier v. Yates, Tex. Civ. App., 237 S. W. 623, writ refused. Had Forest Lawn Burial Park, Inc., following its purchase, asserted its superior legal title in a suit to recover the land from the plaintiff, the plaintiff, even then, could have acquired the legal title by tendering proper payment; or, absent suit by such purchaser, plaintiff could have acquired the legal title by instituting suit within a reasonable time against the purchaser and tendering proper payment. Pierce v. Moreman, 84 Texas 596, 20 S. W. 821; Thompson v. Robinson, supra; Cleveland State Bank v. Gardner, 121 Texas 580, 50 S. W. 2d 786. It could have contested the title of the purchaser under the foreclosure sale without prejudice to its right, at the same time, to plead its right of redemption in an alternative count. Wier v. Yates, supra. But having chosen instead to stand on its claim of legal title, without proper payment or tender of

payment, it must now be held to have lost its right to redeem. Stone Cattle & Pasture Co. v. Boon, supra.

■ The plaintiff's right to recover in this case was dependent upon its ownership of the land taken and damaged by the State. At most plaintiff proved that it at one time owned an equitable right to acquire title to the property which right never ripened into title and has now been lost. We need not speculate on what might have been the result had the plaintiff joined all proper parties in this suit and made a proper tender. That was not done. Nor need we speculate on what would have been a proper sum to tender since no tender of any sort was made.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Associate Justices Wilson and Culver not sitting.

Opinion delivered January 7, 1953.