**BARR et al. v. WALL et al.**

**No. 6716.**

Court of Civil Appeals of Texas.

Texarkana.

Dec. 10, 1953.

Rehearing Denied Feb. 25, 1954.

Long & Strong, Neal Powers, Carthage, Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellants.

Sid B. Turner, J. E. McLemore, Jr., Tom Bankhead, Carthage, for appellees.

WILLIAMS, Justice.

Lloyd Thompson, the agreed common source of title, conveyed to W. E. Langley a 77.9 acre tract of land out of the Samuel Duncan Survey in Panola County, Texas. In this conveyance, dated December 6, 1916, Thompson retained a vendor's lien to secure the payment of four vendor's lien notes therein described, which were executed by Langley to Thompson. Note No. 1 was paid. Thompson on December 4, 1918, sold and assigned to J. A. Jordan notes 2, 3 and 4 of the series "together with all and singular the contract lien, vendor's lien, rights, equities, title and interest in said land" which Thompson had by "virtue of being the vendor, payee and holder of the notes." This assignment and all conveyances mentioned in this opinion, unless otherwise expressly indicated where each forthwith recorded in the deed records of Panola County.

Above notes were outstanding on December 11, 1919, when Langley on this date executed and delivered a deed which purports to convey to J. O. Smiley an undivided one-half interest in the minerals. Appellants and defendants below, Mrs. Pat M. Barr joined by her husband, Munson McKinney, W. G. Phillips and Robert M. Williams, individually and as trustee, asserted their respective interests in the aggregate of one-half mineral interest, subject to an outstanding leasehold estate. Such asserted interests are grounded on the title emanating out of the Langley to Smiley mineral deed.

On November 19, 1921, approximately two years after the recordation of the mineral deed to Smiley, Jordan, the assignee and owner of the unpaid notes numbered two, three and four and the lien securing the same, filed suit on the notes and for foreclosure of the vendor's lien. Only W. E. Langley, and no other, was named as defendant. J. A. Jordan was the purchaser of this 77.9 acre tract at the sheriff's sale held on July 5, 1922, pur-

suant to a proper order of sale issued on the judgment of foreclosure dated April 28, 1922. The judgment that was rendered, out of which the order of sale was issued, describes the 77.9 acres by metes and bounds; sets out the amount due on the three notes with recovery for such amount; and follows with the recitation, "And it is ordered, adjudged and decreed by the court that the lien as it existed on the 6th day of December, 1916, upon the above described tract of land be and the same is hereby foreclosed." This title to the tract so acquired by Jordan passed by mesne conveyances to Richard Wall, and upon the latter's death was inherited by Mrs. Irma Wall, the widow, and W. T. Wall, an only child, the appellees and plaintiffs below.

In the conclusions of law filed, the court concluded from the findings of fact that plaintiffs had proved a superior title and the defendants had not; and that "after foreclosure of a vendor's lien by the holder of the superior title, a subvendee only had a right of redemption which, when never asserted or exercised after thirty years is barred by laches." Appellees were awarded title and possession to the one-half royalty interest involved here, less 12.233 royalty acres sold by appellees to other persons, not parties to this suit, in November, 1948, and April, 1950.

■ Appellants assert that the prosecution of the foreclosure suit to final judgment and the acceptance by Jordan of the sheriff's deed constituted an election on the part of Jordan to affirm the sale which divested Jordan, by waiver of superior title; that is, by such election, superior title was by Jordan relinquished through foreclosure of the vendor's lien. The recent decision by our Supreme Court in State v. Forest Lawn Lot Owners Ass'n, Tex.Sup., 254 S.W.2d 87, and the decisions cited or discussed on page 92, sets at rest adversely to appellants this asserted waiver or loss of the superior title. It is there in substance restated that the holder of the superior title has the right to sue the immediate vendee to foreclose the vendor's

lien, and although the subvendee would be a proper party, the subvendee is not a necessary party. And further, the failure to join a subvendee in a foreclosure suit does not give such subvendee the legal title to the property. If the purchaser of land at the sale under the judgment was the holder of the superior title, as here, then and in that event, the purchaser is vested with the legal title to the land.

■ In such event, the subvendee not being a party to the foreclosure suit, has the right to redeem the property by paying the notes within a reasonable time or institute a suit setting up such equities, Revard v. Wood, Tex.Civ.App., 156 S.W. 2d 561, wherein it was held that 15 years is too long to assert such right to redeem the property. The trial court concluded that this right of redemption which, when never asserted or exercised, after thirty years is barred by laches. We are in accord.

The Sheriff's deed into Jordan following the usual recitations to be found in such character of deed such as references to date, style and number of the judgment, publication of notices, date of sale, name of purchaser, and amount of bid, etc., then recites, "I, W. H. Matthews as the sheriff as aforesaid, have sold and by these presents do grant and convey unto the said J. A. Jordan *all the estate, right, title and interest which the said W. E. Langley had on the 1st day of June, 1922, or at any time afterwards of, in and to the following described premises.*" Then follows description of the tract by metes and bounds. The subsequent conveyances under which appellees claim title, each of which describes the tract by metes and bounds, closes with the recital *"being the same tract conveyed to J. A. Jordan by W. H. Matthews, sheriff in deed recorded in Vol. 59, page 473."* (All italics ours). It is appellant's position, grounded on the recitations that we have italicized, that the sheriff's deed did not include nor convey the one-half interest that had been conveyed prior thereto by Langley to J. O. Smiley. The observations made in the disposition of

the preceding point and the authorities there cited are likewise applicable to this point, and it is overruled. The superior title to the whole tract rested in Jordan on June 1st, 1922, and prior thereto, and remained intact.

■ W. G. Phillips, a defendant below, who claims one-fourth of the minerals under the tract by virtue of a mineral deed from Neal Powers, a predecessor in title under the Langley mineral deed, urged the five years statute of limitation, Art. 5509, R.C.S. of Texas, as a bar to plaintiffs' recovery of such interest. Phillips' deed to the one-fourth interest which is dated April 12, 1946, was filed for record on May 7, 1946, more than five years prior to the filing of this suit on January 5, 1952. The court found that Phillips paid taxes on a royalty interest, which was and is designated by the tax receipt in evidence as being a percentage-wise part of an oil and gas unit comprising 656.48 acres, during the years 1947 to 1951, both inclusive, when due and before delinquency. There is evidence to the effect that Phillips received royalty payments from the Chicago Corporation from July, 1946, each and every month to January, 1953. A severance of the surface and mineral estates had occurred years prior to date he had acquired his asserted royalty interest. No possession of any character was shown. No well was located or drilled on the tract involved. He had executed no oil and gas lease covering any interest in the tract to the Chicago Corporation or anyone else. Such facts are insufficient to mature the asserted limitation title in that they fail to meet the requirements of Art. 5515, R.C.S. of Texas, which reads: "'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under the claim of right inconsistent with and hostile to the claim of another." See 31A, Tex.Jur., p. 42.

Error is assigned to the court's denial of defendants' claim that the division order executed in 1946 "constituted an acknowledgment, ratification and acquiescence in and to the claims, interests and titles of all owners in said unit"; and further, that by reason of its execution the plaintiffs are now estopped to assert their cause of action.

In lieu of the additional findings of fact as requested by defendants, the trial court further found additional facts which together with the original findings, pertinent to the division order and the points, are as follows,—"I do find that there is no evidence that the defendants or their predecessors in title authorized the formation and consolidation of said unit nor is there any evidence that the operator of the leasehold estate holds title under any mineral lease from the defendants or their predecessors in title * * * that the operators of the leasehold estate in said unit produced under and by virtue of mineral leases emanating through plaintiffs' title to the land in controversy; that said division order allocated nothing, did not designate any particular tract with respect to any individual and that plaintiffs executed the instrument in regards to a distinct tract to that in controversy with no intent to recognize or warrant the title of any other person's interest in the unit." Based thereon, the court concluded that "plaintiffs were not estopped to claim title to the minerals, nor have they ratified the claims of defendants.

A deed executed by Mrs. Irma Wall and one executed by her as guardian of the estate of her son W. T. Wall, then a minor, both dated May 7, 1941, both purport to convey in fee simple with covenant of general warranty of title to M. H. Smith and Seth E. Smith 117 acres of land out of this Duncan Survey, being a ten, thirty and the 77.9 acre tract involved. She purports to convey a 5/8 interest and as guardian the 3/8 interest of her son. Each deed contained a reservation or exception to above grant, in which they retained an undivided one-half interest in all the royalty, gas royalty, gasoline and royalty interest in all other minerals under and that may be produced and mined from the respective 3/8 and 5/8 interest in said land. Each deed contained the further provision that it shall not be necessary for grantor to join in the execution of any oil lease

on the land, and grantor shall not be entitled to any part of any delay rentals but grantees shall not execute any lease unless such lease shall provide for at least a royalty of the usual ⅛.

September 6, 1941, M. H. and S. E. Smith, the grantees in above deeds, executed an oil and gas lease to N. V. Kinsey and Roy Overlees covering above three parcels of land. The unitization agreement dated September 1, 1945, enumerates and identifies various leases by reference to grantors, grantees, date and volume and page of recordation. This pooling agreement lists 23 tracts of land aggregating 645.46 acres, all out of the Duncan Survey, and was executed by the Chicago Corporation, N. V. Kinsey and two other leaseholders. Overlees does not appear to have executed it. This agreement by means of references as just indicated includes above lease into Kinsey and Overlees of September 6, 1941, and along with fifteen other leases includes one dated June 6, 1945, that had been executed by the then asserted owners of the Langley one-half mineral interest. This latter lease was not introduced in evidence. The grantors in this latter lease on September 17, 1945, conveyed to Neal Powers, the defendants' predecessor in title, all their royalty interest in the 77.9 acre tract.

During 1946, Neal Powers, the then asserted owner of the one-half royalty emanating out of Langley, plaintiffs and others executed a division order to the Chicago Corporation, which sets out the alleged interests, here involved, as follows:

(21) W. T. Wall, minor,
 ⅛ x ⅜ x 19.29........ .00137737
(22) Mrs. Irma Wall, widow,
 ⅛ x ⅝ x 19.29........ .00220562
(19) Neal Powers,
 ⅛ x 42.995........... .00818666

The initial paragraph of this order reads: "The undersigned certify and guarantees that he, she, or it, is the legal owner of, and hereby warrants the title to his, her or its respective interests as set out below in all gas produced and sold from, and all condensate, natural gasoline —allocated to the Carthage Gas Unit No. 17—Wall consisting of 656.48 acres out of the Samuel Duncan Survey under all the terms and conditions of that certain pooling agreement dated September 1, 1945," with other recitals to identify the land and leases, and closes with the clause, "and each of the undersigned do hereby confirm, ratify and adopt said agreement as being a valid, binding and subsisting pooling agreement as to each of them." This division order was never recorded, if in fact any are ever recorded. The Chicago Corporation completed a gas well in December, 1946, not on the tract involved but within the acreage that had been embraced in the unitization agreement. There is evidence that Phillips, one of the defendants who acquired one-half of the interest of Neal Powers from him in April, 1946, had received royalty payments from the Chicago Corporation (the amount not shown) each and every month; and that Neal Powers had received monthly royalty payments from the same company (amount not definitely disclosed) on the remainder of his asserted interest until he sold one-fourth interest in the whole to Munson McKinney in 1949.

In our efforts to grasp an understanding of the import of the various instruments and the calculations incident thereto the writer has wished for various types of mental crutches. It is possible and probable that the 19.29 acre recital in the division order has reference to the ten plus 30 acres included in the Walls lease to the Smiths, and that the 42.995 acres designated for Neal Powers has reference to the asserted Langley mineral interest plus a four plus acre interest acquired elsewhere. The division order recites and makes a deduction for highway acreage which might account for the discrepancies above noted. The division order recites a 4.85 acreage highway deduction on four leases which includes the two here in controversy. Based upon the foregoing concise statement of the evidence, we are not in accord with the court's findings that there is no evidence to support the findings above enumerated

with respect to the import of the division order that was signed. If that order be given effect per its recitations, it recognized that defendants' predecessor in title did own "⅛ x 42.995 acre interest." We feel that this phase of the case has not been fully developed and that upon proper supplemental pleadings, evidence that was ruled out may become admissible in explanation of its execution. Hence, the judgment will be reversed and the cause remanded. We feel that the disposition of this issue rests upon the import of the holding in Kuklies v. Reinert, Tex.Civ. App., 256 S.W.2d 435, and decisions there collated, unless avoided by the import of the decisions cited in Magnolia Petroleum Co. v. Butler, Tex.Civ.App., 86 S.W.2d 258 and Humble Oil & Refining Co. v. Jeffrey, Tex.Civ.App., 38 S.W.2d 374, cited in support of the text in 43 T. J., p. 895.

The other matters complained of in other points not here discussed are not likely to occur on another trial.

The judgment is reversed and cause remanded.

### On Motion for Rehearing

In a further examination of the record in response to vigorous motions filed by the respective litigants, we find we were in error in our former opinion that the trial court had held that there was no evidence to support the contentions of appellants with respect to the division order.

No. 11 of the court's original findings of fact reads: "I find that the plaintiffs did not ratify or recognize the interest claimed by the defendants or defendants' predecessor in title."

Defendants filed a request for additional findings in which No. 6 reads as follows: "I find that the lands and mineral estate here in controversy was placed in a unit for the production of gas on September 1, 1945, which unit was designated Carthage Gas Unit No. 17 Wall." And No. 8, to-wit: "I find that a gas division order was executed by plaintiffs on June 11, 1946, which said division order allocated to plaintiffs their share as mineral

owners under another tract in this unit and to defendants' predecessor in title, Neal Powers, the interest in controversy."

The trial court in response to above request did file additional findings of fact as follows: "(6) Defendants' request for additional finding No. 6 is refused and denied for the same is immaterial and calls for a mere statement of evidence and tends to conflict with the court's original findings of fact; but I do find that there is no evidence that the defendants or their predecessors in title authorized the formation and consolidation of said unit, nor is there any evidence that the operator of the leasehold estate holds title under any oil, gas or mineral lease from the defendants or their predecessors in title. I find that the operator of the leasehold estate in said unit produced minerals in controversy under and by virtue of an oil, gas and mineral lease emanating through plaintiffs' title to the land in controversy. I find further that no oil, or gas well was ever drilled or located on the land in controversy."

"(8) Defendants request for additional finding No. 8 is refused and denied for the reason that the same is contrary to the evidence, is unsupported by the evidence and calls for a mere statement of evidence and the same tends to conflict with the court's original findings of fact; but I do find that said Division Order allocated nothing; and did not designate any particular tract of land with reference to any individual and the same was only an instrument between the plaintiffs and the plaintiffs' lessee. That the plaintiffs executed the instrument in regard to a distinct tract of land to that in controversy and with no intent to recognize or warrant the title of any other person's interest in the unit."

Although all the foregoing are designated in the transcript as findings of fact, some are conclusions of law. In our effort to reconcile some of the probable inconsistencies in above recitals as a whole, it is thought that the conclusions of law therein expressed are grounded on other

conclusions of law, namely, that plaintiffs had proved a superior title to that asserted by defendants under the Langley to Smiley mineral deed. It is now our conclusion that the trial court has found as a fact from the evidence "that the plaintiffs executed the instrument in regard to a distinct tract of land to that in controversy and with no intent to recognize * * * the title of any other person's interest in the unit."

■ "It is settled law that ratification involves the intention to ratify." Humble Oil & Refining Co. v. Jeffrey, Tex.Civ. App., 38 S.W.2d 374, 377 and cases therein cited. Defendants in their answer put in issue this matter of ratification which involved the question of plaintiffs' intent to recognize defendants' claim. A fact issue was so raised. Olvey v. Jones, 137 Tex. 639, 156 S.W.2d 977, 981.

"Upon an appeal * * * every reasonable presumption will be indulged in favor of the findings of the trial court." 3 Tex.Jur. 1059. "In passing upon the sufficiency of the evidence to sustain a finding of the court the evidence will be considered in the light most favorable to the findings." 3 T.J., p. 1063.

We are unable to determine from the record what portions of Mrs. Wall's testimony was considered by the trial court after several exchanges over the admissibility of her testimony in regard to the execution of the division order. The findings of the trial court would indicate that the court did consider in part her explanation that she thought the division order related to her 30 and 10 acre tracts, of which she owned one-half, and that she "would not have signed that in any other way that would disqualify me from coming back later and try to reclaim a larger acreage"; "not intended on the 70 acre, no sir; an entirely different tract." Nonparticipating royalty deeds executed by Mrs. Wall and her son subsequent to the execution of the division order and prior to this litigation purports to convey to others a 5 royalty acre and a 7.2337 acre interest in the 77.9 acre tract.

Mrs. Wall for herself and as guardian for her son executed the division order on June 10, 1946, and the son after reaching his majority signed it August 16, 1946. The record does not reflect when Powers may have signed it. The record reflects that the division order was executed in several sections, and when combined made up the division order. According to a deed in evidence, dated April 12, 1946, or about two months prior to the date Mrs. Wall executed the division order, Powers had conveyed to W. G. Phillips ½ of his ½ claim or a ¼ royalty interest, in which after describing by metes and bounds three tracts, closes with the recitation,—"said tracts of land, as above described, purport to contain 61¼ acres, 25 acres, 3 acres, 10 acres and 77.9 acres of land, but by actual survey contains 57.67 acres, 26.24 acres, 3.08 acres, 9.68 acres and 73.23 acres of land, respectively. The division order recites Neal Powers' interest to be ⅛ x 42.995 in the 645.46 acre unit. Phillips did not execute above division order. Such documentary evidence raises the question what interest in what lands did this ⅛ x 42.995 have reference to and would be material on the issue if plaintiffs intended to ratify and if so, what interest in what lands.

■ Above observations of the record, when weighed under the rule applicable here, will not warrant this court to disturb the fact finding of the trial court "that plaintiffs had executed the division order with no intent to recognize * * * the title of appellants." The former judgment of this court which reversed the judgment of the trial court and remanded the cause is set aside, and the judgment of the trial court is affirmed. The motion of appellants for a reversal and rendition in favor of defendants has been duly considered and is respectfully overruled.