Byron E. REED, Jr., et al., Appellants,

v.

Rosamond Dean TURNER et al., Appellees.

No. 660.

Court of Civil Appeals of Texas, Tyler.

Nov. 30, 1972.

Rehearing Denied Dec. 28, 1972.

McGinnis, Lochridge & Kilgore, Robert C. McGinnis and John W. Stayton, Jr., Austin, for appellants.

Bath, Turner & Patterson and Dean W. Turner, Henderson, for appellees.

DUNAGAN, Chief Justice.

This is a trespass to try title suit brought to determine the title of a tract of land of 150½ acres located in Rusk County, Texas. This suit was instituted in the 4th District Court of Rusk County, Texas, by appellees, Rosamond Dean Turner and the Citizens National Bank of Henderson, Texas, against the appellants, Byron E. Reed, Jr., Clyde S. Reed, Betty Reed Simpson and husband, William Simpson, Lucille Reed Highland, and Arthur F. King, Ralph W. Lucas and Clyde S. Reed as Trustees of Reed Royalty Trust. Appellants answered by a plea of "not guilty." After a non-jury trial, the trial court rendered judgment in favor of appellees-plaintiffs for the full fee simple title to the land in question in this suit. All defendants have appealed.

No findings of fact or conclusions of law were filed and none requested.

There are no factual disputes in this case. The evidence at the trial consisted entirely of stipulations of the parties, exhibits containing instruments affecting title to the land in controversy and the undisputed testimony of a surveyor. All evidence was admitted without any objections.

\* \* \* \* \* \*

Appellants' appeal is based upon two points of error in which they assert that the trial court erroneously rendered judgment for the appellees for the full fee simple title because (1) the undisputed evidence shows that appellants own an undivided one-half interest in the minerals and that said undivided interest was not disturbed by foreclosure of the vendor's lien reserved in the deed from J. G. Stone to Jess Williams conveying the property in question, (2) the judgment in a prior trespass to try title suit involving the same land awarding to the predecessors in title of the appellees an undivided one-half interest in the minerals as against the appellants and that the prior judgment is res judicata as to the rights of the parties in the suit at bar.

Appellees contend by their counterpoints that the trial court did not err in rendering judgment for them for the full fee simple title to the land because (1) the undisputed evidence shows that appellants' one-half mineral interest had been foreclosed in the 1923 suit, (2) appellants' predecessors in title acquired no interest therein by reason of the prior judgment in favor of appellees' predecessors in title for an undivided one-half interest in the minerals, and (3) appellants did not plead or present the defense of res judicata in the trial court and cannot raise it for the first time on this appeal. Appellants concede that the title to the surface is owned by the appellees. Only title to one-half of the minerals is in dispute.

The appellees also argue that the outstanding mineral interest claimed by Reed Royalty Trust, et al., in this case was theretofore foreclosed in 1923, and having failed to avail themselves of any right of redemption, especially after the suit was filed in 1937 when they were given notice of the same, appellants cannot now claim any possible interest in such minerals.

The undisputed evidence shows a common source of title in J. G. Stone to the land in question. Stone on September 13, 1919, conveyed the land to Jess Williams and reserved a vendor's lien in the deed of conveyance to secure such money notes given by Williams. On January 28, 1920, Williams conveyed one-half of the minerals to G. S. Strong who conveyed the same to Byron E. Reed on June 24, 1920.

Appellants' title arises out of the conveyance by Williams to G. S. Strong.

Thereafter, in 1923 Stone sued Williams for foreclosure of the vendor's lien. Reed was not made a party to this suit. Pursuant to judgment in said cause foreclosing said vendor's lien and order of sale, the sheriff conveyed the land to J. G. Stone. Appellees-plaintiffs are J. G. Stone's successors in title. Neither Strong nor the appellees were parties to the foreclosure suit.

Appellants under their first point of error point out to us that the vendor's lien was foreclosed as it existed on the property owned by Williams at the time of the foreclosure judgment in May of 1923; that this was after the date of the conveyance by Williams to Strong of the undivided one-half mineral interest, which occurred in 1920.

Appellants say the question "is whether or not Stone's foreclosure of his vendor's lien against Williams, or Stone's subsequent trespass to try title suit, restored that interest to him and to the plaintiffs (appellees) in this suit." Appellants' first point of error deals with this question.

Appellants' contention is grounded upon the following recitations:

1. The recital in the judgment that *"the lien as it existed on the 12th day of May A.D. 1923,* on the above described tract of land be and the same is hereby foreclosed . . ." (Emphasis ours.)

2. The following recital in the order of sale: ". . . as said lien existed on the 1st day of May A.D. 1923 . . ."

3. The following recitals in the sheriff's deed:

"That whereas by a certain order of Sale, issued out of the District Court of the 4th Judicial District of Texas, of the County of Rusk in Cause numbered 6908, on the docket of said court, in favor of J. G. Stone vs Jess Williams, on a certain judgment and decree of sale rendered in said court on the 1st day of May A.D. 1923, and directed and delivered to me as Sheriff of Rusk County commanding me to seize and sell as under execution the premises described in said order of sale, I, Geo B. Hays, Sheriff as aforesaid, did upon the 21 day of June A.D. 1923, in obedience to said order of sale, seize, and levy upon *all the estate, right, title and interest which the said defendant on the 21 day of June A. D. 1923,* so had, of in and to, and since

said time had of in and to the premises hereinafter described . . .

"Now, therefore, in consideration of the premises aforesaid, and said judgment and order of sale and of the payment of the said sum of two hundred fifty and no/100 dollars, the receipt of which is hereby acknowledged, I, Geo. B. Hays, as the Sheriff as aforesaid, have sold and by these presents do grant, and convey unto the said J. G. Stone, all the estate, right, title and interest which the said Jess Williams, had on the 1st day of May A.D. 1923 or at any time afterwards of in and to the following described premises, as described in the said order of sale, viz: Being situated in the county of Rusk and State of Texas, about 3½ miles North 70 E from the town of Henderson, Texas and being a part of the A. Marr Survey patented to Charles Che*vlier* and bounded as follows to-wit:" (Emphasis ours.)

Appellants argue that the italicized portions of the sheriff's deed clearly show "that the foreclosure was of the vendor's lien as it existed at various dates in May and June 1923 on the land then owned by Williams on those dates, that such land owned by Williams in 1923 was what was ordered sold and that it was in fact what was sold and conveyed by the sheriff to J. G. Stone in obedience to the judgment and order of sale. Thus, the undivided one-half mineral interest of the predecessors in title to the present defendants (appellants) was not disturbed by the foreclosure." We do not agree.

 It is appellants' contention that it is shown by the judgment, order of sale, and the sheriff's deed that the foreclosure was only on the land owned by Williams on the various dates therein shown and that since Williams conveyed the mineral interest to Strong long prior to the dates mentioned in the above recitals, therefore the one-half mineral interest conveyed to Strong was not included in the foreclosure proceedings.

We have carefully examined the 1923 foreclosure judgment and have concluded that it foreclosed the lien on the entire tract of land therein described, including the one-half mineral interest previously conveyed to Strong by Williams. Whiteside v. Bell, 162 Tex. 411, 347 S.W.2d 568 (1961); State v. Forest Lawn Lot Owners Ass'n, 152 Tex. 41, 254 S.W.2d 87 (1953); Barr v. Wall, 265 S.W.2d 208 (Tex.Civ. App., Texarkana, 1953, writ ref., n. r. e.); 58 Tex.Jur.2d sec. 409, pp. 644–647. The vendor's lien notes having been unpaid, the vendor's lien was still outstanding on May 1, 1923, as it was on September 13, 1919, when the vendor's lien was created. Where the purchaser of the land was the holder of the superior title, as here, such purchaser is vested with the legal title to the land. The subvendee, not being a party to the foreclosure suit, had the right to redeem the property by paying the notes within a reasonable time or instituting suit setting up such equities. This right of redemption never being asserted or exercised is at this late date lost. State v. Forest Lawn Lot Owners Ass'n, supra; Barr v. Wall, supra; Revard v. Wood, 156 S.W.2d 561 (Tex.Civ.App., San Antonio, 1941, writ ref., w. o. m.). The superior title to the whole tract rested in Stone on May 1 and June 21, 1923, and prior thereto, and remained intact. Barr v. Wall, supra. Appellants' first point of error is overruled.

After appellees' interest in the minerals was foreclosed in 1923, the full fee simple title, including all the minerals, was vested in the Stones.

Thereafter on March 24, 1932, the Stones conveyed one-half of the minerals to W. E. Wiley, Trustee, for a term of fifteen years with the usual provisions concerning term royalty. It was stipulated in the case at bar that there was no production on the property here involved until 1967. However, it is agreed that this conveyance had no bearing on the instant case.

In January 1937 Stone and his wife filed a trespass to try title suit against the Reed Royalty Trust and others involving one-half of the minerals in and under the same land that is the basis of this lawsuit. Plaintiffs in that suit alleged an ownership of an undivided one half interest in the minerals only. Plaintiffs recovered from the defendants a judgment to the undivided one-half mineral interest as sued for. The effect of this 1937 lawsuit involving the present parties and their predecessors in title is a basis for the present controversy. W. E. Wiley was not a party to the 1937 lawsuit.

Appellants' second point of error deals with the effect to be given to the 1937 trespass to try title suit and judgment therein.

Under this point appellants assert that the judgment in the instant case is erroneous because the judgment in the 1937 suit involving the same land awarded to the Stones, appellees' predecessors in title, an undivided one-half mineral interest as against the appellants or their predecessors in title and that the 1937 judgment is res judicata as to the rights of the parties in the present suit.

Appellants in the present suit make no claim to the surface estate. They state in their supplemental brief that they never had record title to the surface estate of the land in dispute. They claim only the one-half mineral interest that was conveyed to Strong by Williams.

The Stones in the 1937 suit limited their pleadings to the formal allegations as in a trespass to try title suit. In the petition in said suit it was alleged that they (the Stones) were ". . . the owners of the fee simple title to an undivided one-half interest in and to the oil, gas and other minerals in and under and that might be produced from that certain tract of land, to-wit:" (describing the same tract of land as here involved). As a part of the description, it is recited that this is the same land conveyed by Geo. B. Hays, Sheriff of Rusk County to J. G. Stone by deed on August 28, 1923, and recorded in Vol. 121,

pp. 83–4, Deed Records of Rusk County, Texas.

The evidence shows that Stone conveyed the land to Williams retaining a vendor's lien note; that Williams conveyed a one-half mineral interest to Strong, appellants' predecessors in title; that Williams did not pay the vendor's lien note and Stone filed a suit for foreclosure and recovered judgment of foreclosure and order of sale and Stone bought under the sheriff's sale. Neither Strong nor his successors in title were parties to the suit.

After said foreclosure Stone again owned the full title to the tract of land in suit. Apparently Strong's successors in title were not willing to admit the foreclosure proceeding had also divested them of title to the one-half mineral interest. This apparently was the only reason why in 1937 the Stones filed suit in trespass to try title against Strong's successors in title alleging that they were the owners in fee simple title of an undivided one-half mineral interest in said tract of land. The court awarded the Stones judgment for said one-half mineral interest.

Since the record shows that in 1937 the only claim Strong's predecessors in title had was the one-half mineral interest conveyed to them by Strong and that this was the only interest, insofar as this record shows, that they have ever legally claimed. It appears that this is the one-half mineral interest that was in controversy in the 1937 suit.

It further is shown that in the 1937 suit the defendants, Strong's successors in title (appellants), withdrew their answers before the trial of the suit. This indicates that the appellants made no further contest of the Stones' 1937 suit, filed no cross-action, and made no claim to any interest whatsoever in the land in suit and the judgment was by default. The court in the 1937 judgment did not award Strong's successors in title (appellants) a take-nothing or any other judgment. To the contrary, the court in said suit decreed "that the

plaintiffs J. G. Stone and wife, Ola Stone, do have and recover of and from the defendants Reed Royalty Trust, an unincorporated association, Clyde S. Reed, manager of said Reed Royalty Trust, Arthur M. King and R. M. Lucas trustees of said Reed Royalty Trust and the unknown beneficiaries of said Reed Royalty Trust and Stanley-Edgar Consolidated Minerals, Oil and Gas, Inc., a corporation, the title and possession to an undivided one-half interest in and to the oil, gas and other minerals in and under and that may be produced from that certain tract of land, to-wit:" (describing the same land as described in appellants' original petition in the case at bar).

In the present suit the Stones' successors in title, the appellees, sued Strong's successors in title, the appellants in the present suit, in trespass to try title for the entire tract of land and that the appellees recovered judgment in the trial court for the full interest in the land.

Appellants contend, under their second point of error, that the appellees are not entitled to judgment for the reason that the entire title to the minerals was in issue in the 1937 suit and that the Stones, appellees' predecessors in title, recovered judgment for only a one-half mineral interest. In other words, appellants assert that appellees' predecessors in title (the Stones) put in issue in the 1937 suit the title to the entire mineral estate notwithstanding the fact that they sued only to recover title to an undivided one-half mineral interest. It seems that it is appellants' contention that the Stones in the 1937 suit had to put in issue the entire mineral title or failing to do so became divested of the title to the entire mineral estate except the one-half mineral interest recovered by them in said suit.

The question then appears to be whether in the 1937 trespass to try title suit the plaintiffs were required to sue for, put in issue and risk losing their entire interest in said land, even though only an undivided one-half mineral interest appears to be sub-

ject to the only claim by the record that appellants could have had. We do not think they were so required.

In the case at bar, appellants contend that the 1937 trespass to try title suit filed by the Stones against Strong's successors in title to recover an undivided one-half mineral interest in the property adjudicated that appellees recover only an undivided one-half mineral interest in the land involved in the suit; and by reason of this appellees cannot by the present suit recover judgment for the remainder of the minerals except the one-half mineral interest. Appellants cite Cunningham v. Cunningham, 227 S.W. 221 (Tex.Civ.App., Galveston, 1920, n. w. h.); State v. Bryan, 210 S. W.2d 455 (Tex.Civ.App., Austin, 1948, writ ref., n. r. e.) and Craig v. Broocks, 60 Tex.Civ.App. 83, 127 S.W. 572. In our opinion these cases are not authority for appellants' contention.

■ Only an undivided one-half mineral interest was in controversy by the special pleading in the 1937 suit, and, therefore, that was the only interest that could have been affected by the judgment. Title to the balance of the fee estate was not in controversy in 1937. In view of this, it is our opinion that Cunningham v. Cunningham, supra, is not authority for appellants' contention.

In State v. Bryan, supra, the court at 210 S.W.2d page 463 states:

"As regards the issue of res judicata: We are clear in the view that the only effect of the judgment was to adjudicate the title to area involved. It was a judgment in rem only to the extent that it fixed the status of the title to the area as between the parties to the suit. It clearly did not adjudicate the rights of anyone not a party to the suit or one privy to such party. * * * There are many kinds of suits that may be classed as in rem or quasi in rem. It is not necessary to discuss them here. The ordinary suit in trespass to try title is one of them only to the extent that it adjudicates the status of the title to the land involved as between the parties to the suit and their privies. * * *"

In our opinion this case is not authority for appellants' contention that the subject matter of the suit was only a one-half mineral interest. If anything, it is authority in favor of appellees since the in rem of the 1937 suit was only an undivided one-half mineral interest and title to the balance of the fee estate was not pleaded or in issue or adjudicated, and there appears to have been no reason to consider there would be any controversy regarding same.

The case of Craig v. Broocks, supra, on its face appears to be in point on appellants' contention. Under the facts in said case and what was sued for in the first case, and what was not sued for, the result is probably right. However, we do not believe that it should be considered applicable to the present case before this court. In 1937 the only cause of action appellees appear to have had against appellants was as to the one-half mineral interest. Appellants are not, in our opinion, asserting their contentions on a cause of action appellees' predecessors had in 1937 prior to filing suit and the splitting of same, but on what they contend arose out of or what was the result of the 1937 suit. Such being the case, there was no splitting of an indivisible cause of action that was in existence prior to and at the time of the filing of the 1937 suit.

Appellants in the present suit also argue that as between the appellees and appellants, that in the 1937 suit, it is clear that appellees' predecessors at that time could have asserted in that suit title to the one-half mineral interest and the reversionary interest in the other one-half of the minerals and that they did not do so and their successors in title cannot do so now.

Appellants cite the cases of Glenn v. Holt, 229 S.W. 684 (Tex.Civ.App., El Paso, 1921, n. w. h.); Haile v. Holtzclaw, 414 S.W.2d 916 (Tex.Sup., 1967), and

Reed v. Caton, 375 S.W.2d 567 (Tex.Civ. App., Eastland, 1964, n. w. h.). We have read the Glenn v. Holt and Haile v. Holtzclaw cases, but we are unable to find anything in either of these cases supporting the contention made by appellants.

The Reed v. Caton case was the case in which one Garlington sued in trespass to try title to recover a one-half interest in the minerals in certain land in Howard County, Texas. It appears that prior to the present case in 1941 a judgment had been procured by one Wasson against Garlington for the title and possession to said land. It further appears that in 1948 Garlington filed a trespass to try title suit against Wassam et al. claiming the fee simple title and the court rendered a take-nothing judgment against the Garlingtons.

The court said that it was at least the fourth proceeding with reference to the controversy over the title and that the parties are entitled to finally have an end to the litigation.

Also in the Reed v. Caton case, Garlington again filed suit contending that his right to a one-half mineral interest had not been adjudicated. The court said the fee simple title to the land including the reversionary interest had been put in issue and the effect of the previous take-nothing judgment was to divest all title out of the Garlingtons and vest same in Wassom and Reed. A writ of prohibition was granted prohibiting Garlington from taking any further action in the present cause except to dismiss same. In this case in the prior suits, the entire fee simple title had been placed in issue and a take-nothing judgment had been rendered which clearly divested Garlington of all interest.

The Reed case appears to be no authority for appellants' contention in the present case because in the present case the prior suit in 1937 involved only the title to a one-half mineral interest and judgment was recovered by appellees' predecessors in title and no judgment was rendered in favor of appellants' predecessors in title.

Appellants further argue that plaintiffs in the 1937 trespass to try title suit could have determined the ownership of the entire mineral interest; that plaintiffs in the 1937 suit claimed ownership of an undivided one-half mineral interest; that they were thus as a co-tenant of the mineral estate; and that as against the defendants (appellants), who were by plaintiffs' theory trespassers, plaintiffs (the Stones) in the 1937 suit were entitled to recover the full title to the mineral estate and not merely an undivided one-half interest. Appellants further argue that a co-tenant in a trespass to try title suit may recover the whole title against a trespasser, not just his undivided interest. Appellants then cite the cases of Dahlberg v. Holden, 150 Tex. 179, 238 S.W.2d 699 (1951) and Steddum v. Kirby Lumber Co., 110 Tex. 513, 221 S.W. 920 (1920).

■ It is well settled that a plaintiff in trespass to try title who shows that he owns a definite undivided interest in a tract of land and that defendant is a trespasser may recover the entire interest. 56 Tex.Jur.2d sec. 12, pp. 82, 83. The holdings of these cases are merely that a plaintiff in a trespass to try title suit who is a co-tenant with others not parties to the suit, and who is the owner of an undivided one-half interest may recover the whole title as against a trespasser or stranger to the title and not just plaintiff's undivided interest and that this is because a co-tenant is entitled to exclusive possession as against a trespasser. We do not believe that the foregoing cases have any bearing on the present case.

■ Prior to and at the time of the 1937 suit, Stone and wife owned the fee simple title to the entire interest in the land. LeBus v. LeBus, 269 S.W.2d 506, 510 (Tex.Civ.App., Fort Worth, 1954, writ ref., n. r. e.). They owned same by reason of their ownership prior to the conveyance to Williams retaining the vendor's lien and reserving the superior title to the Stones, and by reason of the foreclosure by which

they re-acquired all interest in the fee title to the land. The successors of Strong immediately prior to and at the time of the filing of the 1937 suit owned no interest in the land and had only a worthless claim to the one-half mineral interest Williams had conveyed to Strong prior to the foreclosure. At the time of the filing of the 1937 trespass to try title suit the one-half mineral interest claimed by the appellants had been foreclosed in the 1923 foreclosure suit brought by the Stones against Williams. At that time (1937) neither appellants nor their predecessors had any interest, right or title to any portion of the land in question. Insofar as this record shows the most they ever owned was an equitable right to acquire title to the claimed property which never ripened into title and now has been lost. State v. Forest Lawn Lot Owner's Ass'n, supra; Texas Osage Co-Op.-Royalty Pool v. Benz, 93 S.W.2d 196 (Tex.Civ.App., Beaumont, 1936, writ dism.).

It appears there was no co-tenancy whatever in 1937. The Stones as the owners of the full title, in filing suit against Strong's successors, did not confer any title on Strong's successors in title or make them co-tenants with the Stones in the property.

The claim that co-tenancy was created by or existed under the facts in this case appears to us to be without merit for the reason that the record title shows not only the absence of any co-tenancy at the time of filing suit but clearly shows that the Stones were the owners of the full title.

■ Where the record as here reflects no recovery being made by appellants or their predecessors, and they withdrew their answers, the effect of same cannot be to constitute a judgment in favor of appellants recovering the title to any interest in land. It should be noted that appellants in the 1937 suit did not come in and set up their claim to and prove title to the other one-half mineral interest which appellees' predecessors did not sue for or put in issue. Appellants should not be permitted to

now claim title to said other one-half mineral interest when they made no claim to same in 1937, and the record title shows same to be owned by appellees.

■ To have been co-tenants appellants or their predecessors had to have had title in some manner as by conveyance, inheritance, will, limitation, judgment or by any other legal means. LeBus v. LeBus, supra; Republic Production Co. v. Collins, 7 S.W.2d 187 (Tex.Civ.App., Eastland, 1928, writ ref.); Caldwell v. Farrier, 248 S.W. 425 (Tex.Civ.App., San Antonio, 1923, n. w. h.); and 15 Tex.Jur.2d Cotenancy, secs. 2, 3 and 4. It appears they had no title. Furthermore, the present right of possession is an essential element of co-tenancy. Sparks v. Robertson, 203 S.W.2d 622 (Tex.Civ.App., Austin, 1947, writ ref.). Under the record presented to us, it appears that the defendants in the 1937 trespass to try title suit had no such right at the time of the filing of the 1937 suit.

While the record is not clear as to the exact reason however, in view of all the facts and circumstances, the successors of Strong in 1937 were apparently still claiming the one-half mineral interest Williams had conveyed to Strong, and apparently this was the reason for the lawsuit being filed in 1937 by the Stones. It appears to us that in the "exercise of reasonable diligence" by the Stones that there was no reason for them (the Stones) to believe that the predecessors of Strong claimed any interest other than a one-half mineral interest in the property. The record in this case shows that the appellants have never claimed any interest, right or title in or to said land except the one-half mineral interest originally conveyed to Strong by Williams.

■ It is an elementary rule in trespass to try title suits that a plaintiff should not include as a part of the subject matter of the suit any land or interest in land except that which may be in dispute at the time. Since appellants' only claim in 1937 was to a one-half mineral interest,

there was not and could not have been any splitting of a cause of action. It is our opinion that appellants are not entitled to recover for the reason that in the 1937 suit appellees' pleadings and the recovery sought was as to the fee simple title to an undivided one-half interest in the oil, gas and minerals. It is also our opinion that the suit was limited to the recovery of this one-half mineral interest and that the title of the balance of the fee simple estate was not in issue. This they were entitled to do. Rule 783, Texas Rules of Civil Procedure[1]; Kendrick v. Tidewater Oil Company, 387 S.W.2d 122 (Tex.Civ.App., Tyler, 1965, writ ref., n. r. e.); Wagner v. Pulliam, 361 S.W.2d 470, 473 (Tex.Civ.App., Eastland, 1962, n. w. h.); City and County of Dallas Levee Imp. Dist. v. Carroll, 263 S.W.2d 307 (Tex.Civ.App., Dallas, 1953, writ ref., n. r. e.); Poth v. Roosth, 146 Tex. 7, 202 S.W.2d 442 (1947); Hicks v. Southwestern Settlement & Development Corporation, 188 S.W.2d 915, 929 (Tex.Civ.App., Beaumont, 1945, writ ref., w. o. m.); Wood v. Gulf Production Co., 100 S.W.2d 412 (Tex.Civ.App., Texarkana, 1936, n. w. h.); and 56 Tex.Jur.2d sec. 80, pp. 190, 191. Appellants in the 1937 suit withdrew their answers and no judgment whatever was rendered in their favor.

We do not think it can be said that plaintiffs (the Stones) in the 1937 case had to put the entire fee simple estate title in issue if they thought only a one-half mineral interest was in dispute and if they thought they owned all the balance of the fee simple estate without any question. If plaintiffs in the 1937 suit had sued for the entire fee simple title, instead of only a one-half mineral interest and if they had lost the case by a take-nothing judgment or had recovered only a one-half mineral interest, then they would have lost the balance of the fee simple estate that they already owned and the title to which did not appear in any respect to be in dispute. It

is our opinion that a plaintiff in a trespass to try title suit is not required to put in issue the whole title to the land and risk losing same when he considers his title to a one-half interest is secure and he is attempting to recover only the other one-half interest which is in dispute, nor that a splitting cause of action can apply. Wood v. Gulf Production Co., supra; Poth v. Roosth, supra; and Taylor v. Higgins Oil & Fuel Co., 2 S.W.2d 288 (Tex.Civ.App., Beaumont, 1928, writ dism.). The 1937 cause of action pleading did not go to the other one-half mineral interest.

We think the 1937 judgment decreeing a recovery in favor of the plaintiffs (the Stones) of an undivided one-half mineral interest in and under the land operated against each of the defendants therein (appellants) in the respect of foreclosing any claim of title they may have had to that portion of the minerals so awarded to the plaintiffs. Wood v. Gulf Production Co., supra. Appellants' second point of error is also overruled.

In view of the 1923 foreclosure judgment which vested in the Stones the full fee simple title to the entire tract of land in dispute, including all of the minerals and the latter 1937 judgment decreeing to the Stones the one-half mineral interest which forms the basis of this lawsuit, it becomes very evident that the appellees are the legal owners of the land here in controversy, including all the minerals thereunder. Once an issue of title has been determined by final judgment between the parties thereto, their rights have been adjudicated. Martin County v. Magnolia Petroleum Co., 252 S.W.2d 266, 270 (Tex. Civ.App., Amarillo, 1952, n. w. h.).

Therefore, the judgment in the present case in favor of appellees for the whole title, can be substantiated either on the basis of appellees' title under the judgment in

1. (c) The interest which the plaintiff claims in the premises, whether it be a fee simple or other estate; and, if he claims an undivided interest, the petition shall state the same and the amount thereof.

the 1937 case for the one-half mineral interest and for the balance of the fee simple estate, since appellees owned same and have never conveyed same and since it was not the subject matter of the 1937 suit and there was no reason for it to have been the subject of said suit or that appellees' predecessors in title by reason of the 1923 foreclosure judgment and sale thereunder became the owners of the full fee simple title to the entire tract of land in dispute, including all the minerals, and consequently the 1937 suit was unnecessary and the judgment therein changed nothing.

We think the trial court correctly awarded judgment for the plaintiffs-appellees and the judgment should be affirmed.

Judgment affirmed.